William MARCO, as administrator of all and singular, the goods, chattels and credits of Harry Marco, deceased, a stockholder of Blue Ridge Corporation, now Blue Ridge Mutual Fund, Inc., on behalf of himself and all other stockholders similarly situated, and on behalf of Blue Ridge Corporation, now Blue Ridge Mutual Fund, Inc., and Ridge Realization Corporation as assignee of Blue Ridge Corporation, Plaintiff,

v.

John Foster DULLES, Arthur H. Dean and David R. Hawkins, as Executors of the Estate of Harrison Williams, Deceased, John Foster Dulles, Sidney J. Weinberg, Waddill Catchings, Walter E. Sachs, Arthur Sachs, Howard J. Sachs, Henry S. Bowers, Louis E. Kilmarx, Blue Ridge Corporation now Blue Ridge Mutual Fund, Inc. and Ridge Realization Corporation, Defendants.

United States District Court
S. D. New York.
June 17, 1959.
Memorandum June 25, 1959.

See also 169 F.Supp. 622.

536

David M. Palley, New York City, for plaintiff. David M. Palley and Morris. Gottlieb, New York City, of counsel.

Fennelly, Eagan, Nager & Lage, New York City, for Ridge Realization Corp. Leo C. Fennelly, of counsel.

Sullivan & Cromwell, New York City, for defendants John Foster Dulles, Sidney J. Weinberg, Waddill Catchings, Walter E. Sachs and David R. Hawkins as Executor of the Estate of Harrison Williams, Deceased. Milton Pollack and Henry N. Ess, III, New York City, of counsel.

HERLANDS, District Judge.

### The Principal Question

Is plaintiff's claim in this Federal action the "same cause" as that which plaintiff formerly asserted in a prior dismissed state court action against the same defendants?

This is the principal, though not the only, question raised by defendants' motions for summary judgment (F.R.Civ.P. rule 56, 28 U.S.C.A.) and judgment dismissing the complaint (F.R.Civ.P. rule 12) in this action, jurisdictionally based on diversity of citizenship. The words "same cause" are quoted from New York Civil Practice Act section 23; [1] and the answer to the principal and related questions posed by the motions requires an interpretation of the phrase "a new action for the same cause" in that section, which relevantly provides:

---

1. Section 23 is part of Article 2, entitled "Limitations of time." In its entirety, section 23 reads:

"§ 23. Effect of reversal of judgment or termination of action. If an action is commenced within the time limited therefor, and a judgment therein is reversed on appeal without awarding a new trial, or the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if he dies and the cause of action survives, his representative, may commence a new action for the same cause after the expiration of the time so limited and within one year after such a reversal or termination. This section also applies to the workmen's compensation law."

"If an action is commenced within the time limited therefor, and * * * is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff * * * may commence a new action for the same cause after the expiration of the time so limited and within one year after such a * * * termination."

General Statement of Conclusions

The court has concluded that (a) plaintiff has standing to maintain this action; (b) plaintiff is not barred by former adjudication from maintaining this action; (c) this court has jurisdiction over the subject-matter of this action; (d) the complaint alleges a claim on which relief may be granted; (e) the New York statutes of limitation do not bar the grant of relief herein; (f) there are genuine issues of material fact to be adjudicated herein; (g) the defendants' motions are denied in all respects, except that the time of the defendants to answer or to move for an order with respect to the complaint under Rules 12(e) and 12(f) is enlarged until ten days after the date of the filing of this decision.

In amplification of the foregoing, the court has specifically concluded that this Federal action was effectively commenced under New York Civil Practice Act section 23, and that the complaint herein satisfies F.R.Civ.P. rule 23(b); that the former state court action had been dismissed for Ida Marco's failure to appear for an examination before trial; that the former state court action had not been abandoned nor had it been terminated by a voluntary discontinuance or a dismissal of the complaint for neglect to prosecute or a final judgment upon the merits; that neither the 1951 assignment of this cause of action (more fully discussed below) nor the 1951 corporate merger (likewise more fully discussed below) has the effect of precluding this action or incapacitating the plaintiff from bringing it.

Commencement of State Court Litigation in 1936

In September 1936, Harry Marco (now deceased) commenced a stockholder's derivative action in the Supreme Court of the State of New York, Kings County. That state court action was dismissed on January 7, 1958 for failure of the plaintiff therein (Ida Marco, as ancillary administratrix, etc., of Harry Marco, deceased) to appear for examination before trial.

On March 5, 1958 (within one year after the state court dismissal), the present stockholder's derivative action was brought by William Marco, as administrator, etc. of Harry Marco, deceased, against the same defendants on the basis of the same business transactions as had been alleged in the dismissed state court action.

The defendants include persons who were, in the years complained of, directors of Blue Ridge Corporation (hereinafter "Blue Ridge"). Blue Ridge, a Delaware corporation organized in 1929, was in the investment business. Marco's claim was based on certain stock and loan transactions allegedly made by the said directors on behalf of Blue Ridge in collaboration with other defendants.

The multitudinous events between 1936 and March 5, 1958 are the historical and legal matrix of defendants' present motions. In a tug-of-words, each side blames the other for stalemating the state court litigation. It is not necessary, were it possible on the paper record before this court, to resolve the question of comparative dilatoriness.

Various aspects of the facts of this case have already been reported by the courts. E. g., Marco v. Dulles, D.C.S.D. N.Y.1959, 169 F.Supp. 622; Marco v. Sachs, Sup.Ct.Kings Co.1951, 201 Misc. 928, 106 N.Y.S.2d 522, also 201 Misc. 934, 109 N.Y.S.2d 226. But it is inescapably necessary to detail the course and chronology of the prior litigation and to describe closely the post-1936 corporate history of Blue Ridge because the defendants' present contentions are

premised upon their version and interpretation of what happened in and outside the courts prior to March 5, 1958, when this Federal action was started.

Harry Marco's Stock Ownership

Blue Ridge was incorporated in Delaware in 1929. In about August or September 1929, Harry Marco acquired 35 shares of the common stock of Blue Ridge at the time of the original offering. His stock certificate is dated April 21, 1930. Harry was a stockholder at the time of the transactions complained about. He was a stockholder at the time he commenced the state court action in September 1936. The latter fact is shown by the corporate records of Blue Ridge, which also establish that there has never been a transfer of the stock out of his name.

On or about July 8, 1942, Harry died intestate. At the time of his death he was a citizen and resident of the State of New Jersey. Some time before he moved to New Jersey, he had resided in Brooklyn and had an office in Manhattan.

At his death in 1942, Harry owned the 35 shares of Blue Ridge stock; his estate became the owner of them. The Marco estate never sold or otherwise disposed of those shares.

Marco Estate's Equitable Stock Ownership

By virtue of a certain 1951 assignment and 1951 merger (to be described in detail below) and the terms of said assignment and merger, the Marco estate, in 1951, became (and is) the equitable owner of shares in two other corporations, namely, 35 shares of Ridge Realization Corporation and approximately 13½ shares of Blue Ridge Mutual Fund, Inc.

The records of the transfer agent of Ridge Realization Corporation show that there was issued to Harry Marco on

August 7, 1951, 35 shares of stock of Ridge Realization Corporation. The certificate for said shares was never received by Harry's representatives, who suggest that the certificate must have been sent to either Harry's 1929 Brooklyn residence address or to his old Manhattan office address. In any event, the stock transfer records of Ridge Realization Corporation as of December 24, 1958, show that Harry is the registered owner of record of 35 shares of stock of Ridge Realization Corporation.

The stock records of Blue Ridge Mutual Fund, Inc. show that Harry is entitled to receive shares of that corporation as a Blue Ridge Corporation stockholder (pursuant to the plan of reorganization of Central States Electric Corporation). The actual issuance of Blue Ridge Mutual Fund shares to Harry's estate presently awaits only the submission of appropriate Surrogate's Court documents.

Contrary to defendants' contentions, the Marco estate is an equitable or beneficial owner of the above indicated stock of Ridge Realization Corporation and Blue Ridge Mutual Fund, Inc. As such owner, the estate has the necessary stock interests for purposes of this action.

Continuation of State Action by Ida Marco as Ancillary Administratrix

On or about November 24, 1943, letters of administration upon the estate of Harry Marco were issued to his wife, Ida, by the Atlantic County Surrogate's Court of the State of New Jersey. Ida qualified as administratrix.

On or about January 27, 1944, ancillary letters of administration were granted to Ida by the Surrogate's Court of Kings County, State of New York; and she qualified as ancillary administratrix.

On or about October 16, 1944,[2] as ancillary administratrix, Ida revived and

2. The motion to revive the action had been made on April 13, 1944; argued on September 15, 1944; and granted on October 16, 1944. Ida was joined in her application by the trustees of Central States Electric Corporation (in reorganization) after an investigation had been made (at the direction of District Judge Robert

continued the action which had been commenced by Harry in September 1936.

### Premature Attempt to Substitute William Marco as Plaintiff in State Action

On July 12, 1956, Ida was discharged as administratrix by the Atlantic County Surrogate's Court of New Jersey. On July 13, 1956, her son William was substituted by the New Jersey court as administrator in her stead. William qualified as such administrator.

On or about July 19, 1956, Ida made an *ex parte* application before the Surrogate of Kings County for the revocation of her ancillary letters. Almost concurrently—and while the *ex parte* application was still pending undetermined before the Surrogate of Kings County—Ida moved in the Supreme Court of Kings County for an order substituting as plaintiff therein her son William (who had been appointed a few days previously in New Jersey, administrator of Harry's estate) as ancillary administrator in place of Ida.

At the time the motion to substitute William in place of Ida as plaintiff was made in the Kings County Supreme Court, not only was the aforesaid Kings County Surrogate's application for the revocation of Ida's ancillary letters still pending undertermined, but there was in force and effect a stay (issued on January 27, 1955 by Mr. Justice Keogh) against Ida from proceeding with the Supreme Court action until Ida submitted to an examination before trial as requested by defendants.

The argument of Ida's motion to substitute William "as administrator" in her place "as ancillary administratrix" as plaintiff came on to be heard before Mr. Justice Keogh on July 24, 1956. Mr. Justice Keogh denied Ida's motion from the bench (Marco v. Sachs, N.Y.L.J., July 26, 1956, Kings Co. Sp. T). The order, signed on September 12, 1956,

was affirmed. 4 A.D.2d 785, c. 27, 165 N.Y.S.2d 563.

The opposition to Ida's motion to substitute William as plaintiff in the Supreme Court action, was based upon the circumstances, first, that William could not be substituted as plaintiff in place of Ida because no order had been made by the Kings County Surrogate's Court revoking Ida's ancillary letters; and, second, that there was an outstanding stay against any proceedings by Ida in the Supreme Court action.

█ Contrary to defendants' present contentions, the basic right or status of William to prosecute the Supreme Court action was not before Mr. Justice Keogh nor decided by him. Under the particular circumstances, Mr. Justice Keogh's denial of Ida's application to substitute William as plaintiff does not constitute an adjudication binding on this Federal court that William lacks status to sue in the United States District Court.

Thereafter, in October 1956, the defendants appeared in the Kings County Surrogate's Court and filed papers opposing Ida's application to revoke her ancillary letters. On January 24, 1957, the Surrogate signed an order granting Ida's application and discharged her as ancillary administratrix.

At this point in the recital of the facts, it is necessary to return to the year 1942 and to consider the corporate history of Blue Ridge, particularly in relation to Central States Electric Corporation, which owned about 66 percent of Blue Ridge's stock.

### Proceedings to Reorganize Central States Electric Corporation

Central States Electric Corporation (hereinafter "Central States"), a Virginia corporation, owned 4,900,788 shares of Blue Ridge's outstanding 7,422,483 shares. Proceedings to reorganize Central States under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq.,

M. Pollard of the U.S.D.C.E.D.Virginia) into the facts and merits of the case. Valid service of the summons and

complaint was not made on Blue Ridge until October 30, 1944.

were instituted in February 1942 in the United States District Court, Eastern District of Virginia.

Reorganization Proceedings and the Marco Action

On July 25, 1944, the court authorized the retention of Paul B. Barringer, Jr., as special attorney for the trustees, to advise them in connection with the Marco action and to investigate whether that action was meritorious.

On November 15, 1944, Carl J. Austrial was appointed by the United States District Court, Eastern District of Virginia, as an additional trustee for the purpose of conducting an appropriate investigation. See Committee for Holders of Central States Electric Corporation, 7% Cumulative Preferred Stock v. Kent, 4 Cir., 1944, 143 F.2d 684.

In November 1944, Mr. Barringer advised the trustees that there was at least one good cause of action (involving damages of about $2,840,000) and that further investigation might develop that there were others.

Under date of December 11, 1944, a report was filed by the trustees in the Eastern District of Virginia concerning Mr. Barringer's views, etc.

On December 23, 1944, United States District Judge Robert M. Pollard signed an order approving the action of the trustees and directors to employ Mr. Barringer's firm and to have an appearance entered in the Marco action and to take steps to protect the interests of Blue Ridge.

There can be no question or quibble that the United States District Court, Eastern District of Virginia, regarded and still regards potential proceeds of the Marco action as an asset to be dealt with in the reorganization proceedings of Central States.

On March 30, 1950, United States District Judge Sterling Hutcheson approved a Chapter X plan of reorganization of Central States, promulgated by the trustees; and the Court of Appeals for the Fourth Circuit affirmed (Central States Electric Corporation v. Austrian, 183 F. 2d 879).

Purpose of Creating Ridge Realization Corporation and Blue Ridge Mutual Fund, Inc.

Under the plan of reorganization of Central States, two Delaware corporation were to be formed: Ridge Realization Corporation (hereinafter "Realization") and Blue Ridge Mutual Fund, Inc. (hereinafter "Mutual"). Realization was organized to collect certain contingent assets of Blue Ridge which could not then be valued, including the cause of action in the Marco stockholder's derivative action, then pending in the New York Supreme Court, Kings County. Mutual was organized as the corporation into which Blue Ridge would merge, after assigning certain contingent assets to Realization.

Assignment of Marco Action to Realization

Blue Ridge assigned to the newly organized Realization all of its interest in the Marco action. The assignment to Realization was executed in New Jersey on June 13, 1951; a similar assignment was executed in New York on June 15, 1951.

In exchange for the assets transferred by Blue Ridge to Realization, Realization issued and delivered to Blue Ridge its entire common stock consisting of 7,422,483 shares. Blue Ridge then declared and issued as a dividend to its shareholders—including Central States, which owned 4,900,788 Blue Ridge shares—one share of Realization stock for one share of Blue Ridge stock. The dividend was payable on August 7, 1951 to stockholders of record of Blue Ridge as of June 25, 1951.

Thus, Central States owns over 66 percent of the common stock of Realization; and all Blue Ridge shareholders have the same interest in the Marco suit that they had before the assignment.

Merger of Blue Ridge Into Mutual

After said assignment of the Marco cause of action, Blue Ridge (in further accordance with the plan of reorganiza-

tion of Central States) merged into the newly organized Blue Ridge Mutual Fund, Inc. The merger agreement, dated May 11, 1951, approved by the stockholders on June 20, 1951, became effective on June 28, 1951. Blue Ridge stockholders received .385047 of a share of common stock of Mutual in exchange for each share of Blue Ridge stock.

### State Court View of the Assignment and Merger

The Chapter X reorganization of Central States under the aegis of the United States District Court for the Eastern District of Virginia, thus clearly involved not only the organization of Realization and Mutual but also the assignment of the proceeds of any recovery in the Marco action from Blue Ridge to Realization and the merger of Blue Ridge into Mutual. The New York courts, in dealing with the Marco action, have so interpreted the reorganization proceedings. 201 Misc. 928, 929–930, 106 N.Y. S.2d 522; 201 Misc. 934, 109 N.Y.S.2d 226, affirmed 2nd Dept.1952, 279 App.Div. 1085, 113 N.Y.S.2d 449, affirmed 1953, 304 N.Y. 912, 913, 110 N.E.2d 737.

### Present Status of Reorganization Proceedings

The Chapter X proceeding involving Central States is still pending in the United States District Court for the Eastern District of Virginia. Carl J. Austrian, president of Realization, is presently the sole trustee of Central States.

The Securities and Exchange Commission has approved the reorganization plan and has continued to receive appropriate reports.

### State Court Adjudication That the Assignment and Merger Did not Cause Marco Action to Abate

In July 1951, the New York Supreme Court (Mr. Justice Bartels) decided that Realization should be "joined as a nominal party defendant" in the then pending Marco action and not be substituted in place and stead of Blue Ridge. Marco v. Sachs, Sp. T. Kings Co., 201 Misc. 928, 106 N.Y.S.2d 522, 528. This decision represented the exercise of the court's equitable discretion.

Shortly thereafter, in October 1951, the New York Supreme Court (Mr. Justice Di Giovanna) was called upon to decide whether the assignment of the Marco cause of action to Realization and the merger of Blue Ridge into Mutual had deprived the Marco estate of its standing to sue and had abated the action. The issue was squarely raised by the defendants' motion for leave to serve supplemental answers pleading the said assignment and merger and for summary judgment in favor of the defendants.

Mr. Justice Di Giovanna's denial of the defendants' motion [201 Misc. 934, 109 N.Y.S.2d 229] "in its entirety" was affirmed by the Appellate Division (2d Dept.1952, 279 App.Div. 1085, 113 N.Y.S. 2d 449) and the Court of Appeals (1953, 304 N.Y. 912, 110 N.E.2d 737). Mr. Justice Di Giovanna said (201 Misc. at pages 936–937, 109 N.Y.S.2d at page 229):

"The rights of plaintiff's intestate accrued prior to the merger [into Blue Ridge Mutual Fund, Inc.] and under the provisions of both Delaware and New York statute law survive. (This is a factor which distinguishes cases relied on by defendants.) Any recovery which may be had in the pending motion is a right of property which Blue Ridge recognized and lawfully assigned to Realization. Both Blue Ridge and Realization are before the court as parties, permitting an effective and binding adjudication.

"The present application [by the defendants] could be construed as tantamount to a repudiation of the assignment made with the sanction of the federal courts. It is predicated on grounds purely technical, which equity, in the absence of compulsion not here present, will disregard. * * *

"As was pointed out in Holmes v. Camp, 186 App.Div. 675, 175 N.Y.S. 349, affirmed 227 N.Y. 635, 126 N.E.

910, 186 App.Div. at page 679, 175 N.Y.S. at page 352 of the Appellate Division opinion. 'An effort should be made to uphold the right of action, if it can be legally done, for, otherwise, a means altogether too handy is presented and sanctioned for destroying the rights of minority stockholders.' "

The New York Court of Appeals memorandum states that the defendants argued "that plaintiff had no status to maintain the action" because "Blue Ridge Corporation had assigned all of its interests in the present action to Ridge Realization Corporation" and that "Blue Ridge Corporation had been merged into Blue Ridge Mutual Fund, Inc. and that by reason of the merger plaintiff's cause of action had abated" (304 N.Y. at page 913, 110 N.E.2d at page 737). The defendants' arguments were rejected by all the New York courts that considered them.

Certain Calendar Proceedings in 1955 and 1956 in the State Court and Claimed Dismissal Under Rule 302

The chronology of certain Supreme Court, Kings County, calendar proceedings in 1955 and 1956 must now be closely detailed because defendants' version of that chronology is the basis for their argument that the state court action had been automatically dismissed—effective as of January 4, 1956—for failure of the plaintiff to prosecute under New York Civil Practice Rules, rule 302, subd. 2 [3] and Special Term Rules of the Supreme Court, Kings County, rule 17(e).[4]

The case was noticed for trial for the November 1953 term by a note of issue served by defendant Realization. In January 1954, the case was marked "off." In December 1954, Realization served notice to restore the case to the calendar of January 1955.

On January 4, 1955, the case appeared on the trial calendar. At that time the case was again marked "off calendar." On the same date, January 4, 1955, the parties argued plaintiff's motion before Mr. Justice McDonald for an open commission to examine one Clinton M. Finney. The motion was granted in part, although Finney's examination was stayed until the completion of defendants' examination of plaintiff. On January 27, 1955, Mr. Justice McDonald modified the original order. While the motions were pending before Mr. Justice McDonald, defendants moved before Mr. Justice Keogh who, on January 27, 1955, stayed all proceedings on the part of plaintiff until five days after plaintiff's examination before trial shall have been completed. Judge Keogh's order was affirmed without opinion on February 27, 1956 (1 A.D.2d 851, 149 N.Y.S.2d 486).

Basic to defendants' argument is the fact—disputed by plaintiff—that the case did not appear on the calendar after January 4, 1955 and hence was dismissed

3. Rule 302, subd. 2 provides:
 "In the supreme court * * * a cause hereafter marked 'off' * * * from the * * * special term calendar or unanswered on a clerk's calendar call, and not restored within one year thereafter, shall be deemed abandoned, and the complaint and counterclaim, if any, shall be dismissed without costs for failure to prosecute, and the clerk shall make appropriate entry to that effect pursuant to this rule without necessity of further order."

4. Rule 17(e) provides:
 "(e) Any cause or proceeding marked 'off' on the call of the Day Calendar or stricken therefrom, may be restored for a day of any subsequent term by filing with the Clerk of Special Term, Part III or Part IV, as the case may be, a stipulation of all parties who have appeared or an order of the court or a five-day notice of restoration, together with proof of service of such order or notice on all parties who have appeared. If a cause or proceeding is not thus restored within one year after it has been marked off or stricken from the day calendar, pursuant to Rule 302 of the Rules of Civil Practice it shall be deemed abandoned and the complaint and counterclaim, if any, or the petition and cross-petition, if any, shall be dismissed, without costs, for failure to prosecute; and the clerk shall make appropriate entry to that effect without necessity of further order."

automatically on January 4, 1956 by the operation of Rule 302. Defendants cite the minutes of the Clerk of Special Term, Part III, Supreme Court, Kings County, including a rubber stamp entry (without a date as to when it was made) that the case was deemed abandoned and dismissed under rule 302 of the Rules of Civil Practice.

Plaintiff, on the other hand, asserts that "the case appeared on the calendar of Special Term, Part III" after January 4, 1955, that is, on April 20, 1955; that on April 20, 1955 all counsel appeared in court; and that the case was marked "off" on said date at the request of plaintiff's attorney. Both Mr. Fennelly (Realization's attorney) and plaintiff's attorney aver that they personally attended at Special Term, Part III on April 20, 1955, when the case was thus marked off.

Plaintiff submits a photostatic copy of three sheets comprising the calendar of Special Term, Part III, on April 20, 1955. (Exhibit "A" annexed to the Palley affidavit of December 19, 1958.) The top sheet is entitled, in part: "Wednesday April 20 1955 Ready Day Calendar Called At 10 A.M." However, the second sheet is entitled: "General Call Calendar of Cases Marked 'Off.'" Marco v. Sachs is the eleventh case on the latter calendar. In presumably the Clerk's handwriting is the notation "Contd off." The Palley affidavit of December 31, 1958 states that "the undisputed fact is that Marco v. Sachs appeared on the *Day* Calendar of Special Term, Part III * * * on April 20th, 1955" (emphasis supplied) and that "it is evident that on April 20th, 1955, there was a regular calendar call and on that day, all counsel having appeared before the Justice presiding, the case was marked off * * *."

Plaintiff is clearly in error. The case was not on the Day Calendar on April 20, 1955. The New York Law Journal of that date (as well as plaintiff's own exhibit) lists the case on the calendar of cases "Marked Off." There was a call of cases on the "Off Calendar"; and the

Marco case was "continued off" the calendar.

Exhibit 8 attached to the moving papers purports to be a printed copy of the text of the minutes of the Clerk of Special Term, Part III, of the Supreme Court, Kings County. Defendants have also submitted a certified photostatic copy of said minutes. Defendants argue that this court must accept without question the said minutes as proof of the status of the case in the state court. The defendants have submitted said minutes as conclusive proof that an automatic dismissal under Rule 302, Rules of Civil Practice took place one year after January 4, 1955.

However, as one of the pending motions herein is for summary judgment, it is necessary to determine whether there is any genuine question of fact concerning the state court calendar status.

A number of circumstances to which reference will now be made suggest that the state court records as to the calendar status are unclear. These circumstances are:

1. There is no entry under the date of January 4, 1955 on the Clerk's Minutes of Special Term, Part III, although all parties agree that the case was on the day calendar on January 4, 1955.

2. The case was marked "off" on January 4, 1955, according to all parties, but there is no entry that the case was marked off on that date or on any other designated date after January 4, 1955.

3. The rubber stamp entry that the case was abandoned and the complaint dismissed under Rule 302 is without date of entry on the certified copy of the Clerk's Minutes. All other entries on that page are dated.

4. In the absence of a date on or after January 4, 1955 showing when the case was marked off, it is unexplained how the Clerk would know when to make the rubber stamp entry of dismissal after a year, since the starting date for the year period does not appear in the minutes.

5. There is no entry in the Clerk's Minutes for April 20, 1955, when the

case appeared on the Special Term, Part III "General Call Calendar of Cases Marked 'Off.'" The latter calendar has the longhand notation "Contd Off."

6. In spite of the foregoing, the case did appear—by virtue of a notice of restoration served on March 23, 1956 by Realization—on the "April 5, 1956 Ready Day Calendar" of Special Term, Part III, as is shown by the photostatic copy of said Ready Day Calendar. The Clerk's Minutes, however, contain the entry "On Cal 4/5/46," without indicating the nature of the calendar. Moreover, the Clerk's Minutes for April 5, 1956 are incomplete, in that they omit the phrase "when stay vacated," which phrase appears in the longhand notation on the said Day Calendar reading: "Stayed— to be restored on 5 days notice when stay vacated."

7. It is unexplained how—in the face of the rubber stamp entry in the Clerk's Minutes indicating a Rule 302 dismissal —the Clerk placed the case on the Ready Day Calendar for April 5, 1956, since a notice of restoration is (according to Rule 17(e) of the Kings County Supreme Court Rules) operative only when filed before the one-year period has run.

8. It is not clear why, on April 5, 1956, the Clerk entered a minute that the action was stayed when the Clerk's immediately preceding entry recited that the action had been dismissed.

9. Similarly, it is not clear why, on October 7, 1957, the Clerk entered a minute that "the Clerk struck this case from the calendar" if the case had already been dismissed.

In view of the foregoing, the minutes of the Clerk of Special Term, Part III, cannot be accepted unqualifiedly as an adequate record of the state court proceedings.

It is necessary to consider facts extrinsic to the Minutes and other records of the state court in order to reconstruct the status of the case and the proceedings taken by the parties so far as they throw light on the status of the case.

Until January 1958, when the case was dismissed out of the state court, all of the State Supreme Court justices before whom this matter came, all of the parties and their attorneys, and the court officials administering the state court calendar (except the unidentified clerk who made the undated rubber stamp entry of dismissal) by their actions plainly indicated that the state court case was an active piece of litigation—the antithesis of "deadwood." See Leg.Doc.(1942) No. 16, Judicial Council of the State of N.Y., Eighth Annual Report, pp. 379, 383. That the case appeared on the Day Calendar of April 5, 1956, that Mr. Justice Steinbrink stayed the action on April 5, 1956, and that Mr. Justice Schwartzwald said in June 1956 that "The action is presently on the General Calendar" (N.Y.L.J. June 12, 1956, p. 11, Sup.Ct. Kings Co.)—all tend to indicate that the action was not treated as a dismissed or abandoned action. Even the defendants' attorney represented to the state court as late as September 23, 1957 that the case "remained off calendar for all practical purposes *except for annual token restoration to frustrate the rule of automatic dismissal, Rule 302, R.C.P.*" (Pollack affidavit, sworn to September 23, 1957, p. 14, contained in the certified copy of the state court judgment roll; emphasis supplied.)

Circumstances Leading to Formal Dismissal of State Court Action by Judgment Entered January 7, 1958

The original complaint had been dismissed for failure to allege facts sufficient to excuse a demand on Blue Ridge directors to sue on behalf of the corporation. 2d Dept.1945, 269 App.Div. 845, 55 N.Y.S.2d 406, affirmed 1945, 295 N.Y. 642, 64 N.E.2d 711. Then, after plaintiff served a first amended complaint and a second amended complaint, the Appellate Division ordered a "separate trial of the issue of futility of demand on the directors to sue on behalf of the corporation." 2d Dept. June 1954, 283 App.Div. 1096, 131 N.Y.S.2d 678.

Defendants' efforts to have plaintiff Ida Marco examined before trial were in

vain. The defendants, therefore, obtained from Mr. Justice Keogh a stay (effective January 27, 1955) restraining plaintiff and her attorneys from further proceedings until five days after plaintiff shall have completed her examination before trial. Plaintiff continued to refuse to submit to a pre-trial examination.

On May 14, 1956, the defendants moved to dismiss the complaint for plaintiff's failure to prosecute (Civil Practice Act, § 181) and for wilful failure to appear for an examination before trial, Civil Practice Act, § 299). On June 11, 1956, Mr. Justice Schwartzwald denied the defendants' motion on condition that plaintiff appear and be examined before July 26, 1956 and that plaintiff "move to restore the action * * * to the Ready Calendar immediately after the completion of the examination"; otherwise, the motion under Civil Practice Act, § 299 was granted. (N.Y.L.J., June 12, 1956, p. 11) On July 2, 1956, Mr. Justice Schwartzwald signed an order to the foregoing effect.

Ida Marco did not appear for examination before trial on or before July 26, 1956. On August 28, 1956, a judgment was entered dismissing the complaint under Civil Practice Act, § 299. On September 17, 1956, plaintiff appealed from the judgment of August 28, 1956.

On July 15, 1957, the Appellate Division reversed and remitted the matter to Special Term for further proof on the issue of plaintiff's wilfulness in failing to submit to an examination before trial. Marco v. Sachs, July 15, 1957, 4 A.D.2d 785, 165 N.Y.S.2d 563.

On September 24, 1957, the defendants again moved under Civil Practice Act, § 299 to strike out the complaint on the ground of plaintiff's failure to submit to an examination before trial or, alternatively, under Civil Practice Act, § 181 to dismiss for plaintiff's failure to prosecute. Mr. Justice Schwartzwald then held hearings on six days in November and December 1957 with respect to plaintiff's claimed physical disability to appear for an examination before trial.

At the conclusion of the hearings, the court struck out the complaint under Civil Practice Act, § 299 for plaintiff's failure to appear for an examination before trial. The Court specifically refused to dismiss for plaintiff's alleged failure to prosecute under Civil Practice Act, § 181. On January 7, 1958, a judgment was duly entered dismissing the action for plaintiff's failure to appear for an examination before trial.

On March 5, 1958—within one year after the entry of the state court judgment of dismissal on January 7, 1958—plaintiff commenced the present Federal action by exercising the power conferred by the saving provisions of Civil Practice Act, § 23.

Despite repeated recitals in the order of January 3, 1958 (upon which the judgment of January 7, 1958 was entered) that the dismissal was grounded on plaintiff's wilful failure to submit to a pretrial examination, defendants persevere in their contention that the judgment should not be construed as based upon plaintiff's refusal to appear for an examination before trial. Instead, defendants claim that this court should accept the judgment as an adjudication either that plaintiff had wilfully failed to prosecute the action or that plaintiff had voluntarily discontinued the action or that plaintiff had consented to a judgment *pro confesso*.

The tactic behind defendants' insistent claim is understandable: a dismissal predicated upon a failure to appear for an examination before trial (Civil Practice Act, § 299) does not prevent the commencement of a "new action for the same cause" (Civil Practice Act, § 23), whereas a dismissal predicated upon any of the grounds now urged by defendants would bar the commencement of a new action (Civil Practice Act, § 23).

There are a number of fundamental difficulties with defendants' argument:

(1) The order of January 3, 1958, granting the dismissal explicitly denied defendants' branch of the motion that sought to have the action dismissed for

failure to prosecute (Civil Practice Act, § 181) and expressly limited the ground of dismissal to plaintiff's wilful failure and refusal to submit to an examination before trial (Civil Practice Act, § 299).

(2) It would have been a simple matter to have included a recital in the judgment that the complaint was being dismissed "upon the merits" (Civil Practice Act, § 482) or for any of the grounds now urged by defendants. That was not done.

(3) In New York practice, the varying recitals are familiar words of art with importantly different legal consequences; hence, the recital used by Mr. Justice Schwartzwald (in the order and judgment settled by defendants) should be given its precise meaning and effect.

(4) Aside from other differentiating features, none of the cases relied on by defendants involved a formal judgment dismissing the action upon the explicit ground that the plaintiff had wilfully failed to appear for a pre-trial examination.

■ (5) In case of ambiguity, the judgment and the order on which it was entered should be construed against the party (in this case, the defendants) who prepared it for settlement and, in any event, in favor of a result that will sustain the right (in this case, the plaintiff's) to a plenary hearing.

■ (6) In its procedural setting, this Federal court is being asked to construe a state court judgment. In the circumstances, the Federal court should adopt a sympathetic construction that more closely accords with the language of the state court judgment and more probably expresses the state court's intention. The Federal court should not indulge in an interpretation that would attach radically different legal consequences from those plainly suggested by the language of the judgment.

■ (7) Having obtained the formal judgment of dismissal of January 7, 1958, defendants are estopped from impeaching that judgment by asserting lack of jurisdiction. Krause v. Krause, 1940,

282 N.Y. 355, 357–358, 26 N.E.2d 290; Brown v. Brown, 4th Dept.1934, 242 App. Div. 33, 272 N.Y.S. 877, affirmed 266 N.Y. 532, 195 N.E. 186; Hart v. Mutual Ben. Life Insurance Co. of Newark, 2 Cir., 1948, 166 F.2d 891, 894, certiorari denied 1948, 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380.

The defendants cannot blow hot and cold and now take a position contrary to that taken in the state court motion wherein defendants sought to obtain the judgment. See Callanan Road Improvement Co. v. United States, 1953, 345 U.S. 507, 513, 73 S.Ct. 803, 97 L.Ed. 1206; Scarano v. Central R. Co., 3 Cir., 1953, 203 F.2d 510, 513; Eads Hide & Wool Company v. Merrill, 10 Cir., 1958, 252 F.2d 80, 84.

In the attempt to nullify the January 7, 1958 judgment that they themselves had won in the state court, defendants now argue that the automatic dismissal under Rule 302, Rules of Civil Practice, effective January 4, 1956, robs the subsequent January 7, 1958 judgment of all legal effect; that this court has no choice but to disregard completely the formal judgment of January 7, 1958; and that, because the case became "dead" on January 4, 1956, this court never reaches the question of the interpretation of the judgment of January 7, 1958.

■ The judgment of January 7, 1958, as the final and formal expression of the state court, cannot be hidden out of view by legerdemain. Nor would this court be justified in engaging in a rear guard attack on the judgment in the guise of searching the minutes of the Special Term, Part III Clerk for evidence of an automatic dismissal by operation of a court rule of practice—a dismissal which, at all times during the pendency of the state court litigation, had been unknown to all the attorneys and the parties and to all the New York Supreme Court Justices who passed on the case.

Entirely aside from the unsatisfactory nature of the minutes of the Special Term, Part III Clerk, the considerations of waiver and estoppel and Federal-State

court interrelations militate against the views advanced by defendants.

■ If it be assumed *arguendo* that the case had been automatically dismissed on January 5, 1956 by force of Rule 302, it is necessary to consider that the state court decisions grant a party, after such a dismissal, the power to apply for an order opening the default and restoring the case to the calendar, even after a default lasting as long as sixteen years. The judgment of January 7, 1958 dismissing plaintiff out of the state court has divested plaintiff of the power so to move to open the default. In the circumstances of this case, the defendants cannot now be heard to argue that plaintiff had failed to exercise that power while the case was in the state court. The stay contained in the order of Mr. Justice Keogh of January 27, 1955, would not prevent plaintiff from moving to avoid or open a default based on a failure to calendar the case, for the courts have limited the extent of a stay by confining it "to some onward movement in the action furthering the interests of the party in default through giving him some affirmative relief therein, and have held that it does not apply to an act of self-defense on his part." Thompson v. McLaughlin, 3d Dept.1910, 138 App.Div. 711, 714, 123 N.Y.S. 762, 765; Blair v. Blair, Sup.Ct.Kings Co.1913, 145 N.Y.S. 397, 399.

While plaintiff had been restrained on and after January 27, 1955 by the stay, the stay would not prevent plaintiff from taking the self-defensive step of opening the default under Rule 302. The defendants admit this in their Further Brief, dated June 10, 1959.

Plaintiff contends that, either through inadvertence, ignorance or mistake, plaintiff's attorney regarded April 20, 1955 instead of January 4, 1955 as the date from which the one-year period of Rule 302 commenced to run. In any event, where the parties' acts indicate that the case is very much alive and the plaintiff manifests no intention to abandon the litigation, the New York courts will readily open a default under Rule 302, Rules of Civil Practice. People ex rel. Weiss v. Boyland, 1st Dept.1957, 3 A.D.2d 738, 160 N.Y.S.2d 235; Jacoby, Inc. v. Kushner, 1st Dept.1957, 3 A.D.2d 905, 162 N.Y.S.2d 657; Fontheim v. Fred F. French Investing Co., Sup.Ct. N.Y.Co.1958, 13 Misc.2d 620, 623, 177 N.Y.S.2d 77.

■ Having deprived plaintiff of the power to move to open the default by virtue of the judgment of dismissal obtained by defendants, the defendants cannot repudiate that judgment as a nullity and, at the same time, confront plaintiff with the claim that the action had been dismissed as of January 4, 1956 by force of Rule 302.

That the defendants should be estopped from now asserting that the case was dismissed under Rule 302 is further strongly suggested by the circumstance, already noted, that defendants' attorney, in his affidavit of September 23, 1957, represented to the state court that the case had been on the calendar by "annual token restoration to frustrate the rule of automatic dismissal, Rule 302 R.C.P."

Defendants' position in September 1957 was that there had been annual restorations of the case to the calendar for the very purpose of avoiding the operation of Rule 302 and—far from asserting that the case had been dismissed under Rule 302—defendants asserted the precise contrary. That is why defendants chose to move to have the case dismissed for failure to prosecute "pursuant to Section 181 of the Civil Practice Act," (defendants' notice of motion, dated September 24, 1957) as an alternative to their motion to have the case dismissed for plaintiff's failure to appear for an examination before trial.

Defendants having taken the position that the plaintiff had avoided a default under Rule 302, Rules of Civil Practice, and defendants having elected to stand on section 181, Civil Practice Act, and the court having found against the defendants in the respect that it denied defendants' alternative request that the case be dismissed under section 181, Civil

Practice Act for failure to prosecute, the defendants cannot at this time repudiate the judgment of dismissal which they themselves obtained and take the new tack that the case had been dismissed under Civil Practice Rules, Rule 302. Callanan Road Improvement Co. v. United States, 1953, 345 U.S. 507, 513, 73 S.Ct. 803, 97 L.Ed. 1206; Hart v. Mutual Ben. Life Insurance Co. of Newark, 2 Cir., 1948, 166 F.2d 891, 894, certiorari denied 1948, 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380; Scarano v. Central R. Co., 3 Cir., 1953, 203 F.2d 510, 513; Eads Hide & Wool Company v. Merrill, 10 Cir., 1958, 252 F.2d 80, 84. Any other view would permit defendants to derive an unconscionable advantage by changing their position in order to summarily dismiss this new action by plaintiff.

The foregoing conclusion is in no way affected by the authorities relied upon by the defendant. Brand v. Union Railway Co., Sup.Ct.Bronx Co.1939, 173 Misc. 224, 17 N.Y.S.2d 504 involved a personal injury action brought in the Supreme Court, after a prior suit had been dismissed in the City Court under a rule of the City Court comparable to Rule 302 of the Rules of Civil Practice. After denying plaintiff's motion to strike out defenses, the Supreme Court held that the Supreme Court action was barred by the applicable three-year statute of limitations, Civil Practice Act, § 49; that the Supreme Court action had not been brought within the one-year period permitted by section 23 of the Civil Practice Act for the commencement of a new action after a prior action had been dismissed not on the merits; and that the City Court action had been dismissed because it had been marked off the calendar; that no application had been made to restore that action within one year; and that a subsequent application by the plaintiff to restore the action to the City Court calendar had been denied. Clearly, the Brand case is sharply distinguishable from the situation at bar.

Wheelock v. Wheelock, 1st Dept.1956, 3 A.D.2d 25, 157 N.Y.S.2d 752, affirmed without opinion 1958, 4 N.Y.2d 706, 171 N.Y.S.2d 99, heavily relied upon by the defendants. A close reading of Wheelock, however, demonstrates conclusively that it does not sustain defendants' position.

In Wheelock, a wife's action for separation, an order was entered in 1935 requiring defendant husband to make support payments. Thereafter, the defendant was held in contempt for failure to pay. In 1939, however, the case was marked off the calendar for plaintiff's failure to bring the matter to trial; and, in 1940, the case was deemed abandoned and the complaint was dismissed pursuant to a rule of the New York County Supreme Court comparable to Rule 302 of the Rules of Civil Practice. As a result, plaintiff's action was at an end on January 10, 1940. Plaintiff did not make any effort to restore the case to the calendar. Thereafter, in 1944, upon the false allegation "that her action was still pending" (3 A.D.2d at pages 26 and 27, 157 N.Y.S. 2d at page 754), plaintiff secured entry of a judgment for the temporary alimony arrears which had accumulated since 1935.

In 1956, defendant applied for an order dismissing the complaint *nunc pro tunc* as of January 8, 1940 and vacating the 1944 judgment for arrears of alimony. Defendant's application was granted. Upon appeal, the Appellate Division affirmed, but granted leave to the plaintiff to "renew her application to open the default upon proper papers showing an adequate and convincing excuse for the long delay." 3 A.D.2d at page 28, 157 N.Y.S.2d at page 755.

In the course of the Appellate Division's opinion, the court did say that the dismissal of the action in 1940 had "deprived the court of the jurisdictional foundation on which the 1944 judgment was supposedly based," but this language must be read in the context of the facts of that case, particularly in the light of the further statement of the court that *"the court would not even now be barred from exercising its discretion to relieve plaintiff of her default * * *."* (Emphasis supplied. 3 A.D.2d at page 28,

157 N.Y.S.2d at page 755) Patently, the latter statement, i. e., that the court was prepared to entertain a discretionary motion to relieve plaintiff of her default, deprives the statement regarding jurisdiction of its literal meaning. Wheelock illustrates the liberal attitude of the New York courts to relieve a defaulting plaintiff of the consequence of an automatic dismissal for failure to restore a marked off case upon a proper showing. This attitude is in accordance with the intention of those who advocated the enactment of Rule 302, Rules of Civil Practice as a device that "will enable court clerks to clear deadwood from the calendars." Legislative Document (1942) No. 16, Eighth Annual Report of the Judicial Council of the State of New York, 379, 383.

Klein v. Vernon Lumber Corp., 1st Dept.1945, 269 App.Div. 71, 54 N.Y.S.2d 248 merely held that where a case has been marked "dismissed" under Rule 302 of the Rules of Civil Practice, the proper procedure is to move to open the default instead of moving to restore the case to the calendar. Niewiadowski v. Kulp-Waco, Inc., 4th Dept.1952, 279 App.Div. 974, 111 N.Y.S.2d 564 simply followed the Klein case, supra.

The foregoing facts and authorities lead to three findings and conclusions:

(1) Assuming *arguendo* that the action had been off the calendar for more than one year after January 4, 1955, the defendants have waived their privilege to assert, and are also estopped from asserting, that the action had been automatically dismissed as of January 4, 1956;

(2) the action was formally dismissed by a judgment entered January 7, 1958 on the single ground (Civil Practice Act, § 299) that the plaintiff had failed to appear for her examination before trial; and

▆ (3) the formally and explicitly found failure on plaintiff's part to appear for examination before trial did not constitute a failure to prosecute within the meaning of Civil Practice Act, § 23,

nor a voluntary discontinuance nor a consent to a judgment *pro confesso*.

We come then to other legal contentions of defendants in support of their motions.

Compliance with Civil Practice Act § 23

▆ This new Federal action comes within the saving provisions of Civil Practice Act, § 23. The state court judgment entered January 7, 1958 was pursuant to an order granted on January 3, 1958 which specifically rejected defendants' claim that plaintiff had been guilty of failure to prosecute. That judgment and order are a conclusive adjudication that the dismissal was not "a dismissal of the complaint for neglect to prosecute the action" within the meaning of Civil Practice Act, § 23.

▆ The present complaint is for the "same cause" as that set forth in the prior, dismissed state court action. The same underlying facts and transactions that gave rise to the cause asserted in the state court are pleaded in the present complaint. In determining whether the "same cause" is now being asserted, the court must look to the basic operative facts and not to pleading nomenclature. See Titus v. Poole, 1895, 145 N.Y. 414, 422–423, 40 N.E. 228. The word "cause" as used in Civil Practice Act, § 23 is thus equivalent to the word "claim" as used in Federal pleading. See Schwartz v. Eaton, 2 Cir., 1959, 264 F.2d 195, 196.

The same defendants are named in both actions. The Marco Estate is still the real party-plaintiff, notwithstanding a change in the representative of said estate. Both opposing sides of the litigation in the present action have a substantial identity of interest, as they were aligned as adversaries in the state court action. See Producers Releasing Corporation De Cuba v. Pathe Industries, 2 Cir., 1950, 184 F.2d 1021, 1023. The added elements as to Federal jurisdiction and other incidental allegations do not vary or add to the cause of action or claim asserted but are designed only to meet the Federal pleading requirements as to jurisdiction and the specifications

**550**

applicable to a "Secondary Action by Shareholders," F.R.Civ.P. rule 23(b).

A common denominator of most of defendants' arguments is that this Federal action is to be conceived and treated solely as if it were a brand new action without any historical background of litigation. Defendants have shut their eyes to the glaring fact that this is a new action for the "same cause" as that asserted in the dismissed state court action.

In this respect, defendants' arguments are premised on a mechanical literalness of the word "new" in the phrase "new action." That literalness is attenuated by the fact, historical in this case, that the cause asserted in this "new action" is the "same cause" as that asserted in the former action which was dismissed not on the merits. That historical fact is the core of the statutory authority under Civil Practice Act, § 23 to bring this new action. To black out that historical fact and to spotlight only the word "new" is to cut the picture to fit the frame.

 The strict and piercing truth is that the purpose of a "new action" authorized by section 23 is to reinstate, in practical effect, the dismissed action by permitting the plaintiff to resume litigating the "same cause." The statute is not to be hobbled by black-letter reasoning. A latitudinarian interpretation has been given Civil Practice Act, § 23 by the New York courts. None of the authorities relied upon by defendants resemble the uniquely peculiar facts of this case.

Civil Practice Act, § 23 is satisfied by the allegations in the present complaint concerning futility of a demand on the board of directors to bring suit in behalf of the corporation. Paragraph 6 of the present complaint, verified February 27, 1958, reads as follows:

"6. No demand has been made upon the directors or stockholders of either of the aforesaid corporations to bring this instant action because the cause of action alleged in the within complaint is brought pursuant to the provisions of Section 23 of the Civil Practice Act of

the State of New York and is the same as the cause of action which had been heretofore asserted by Ida Marco, as ancillary administratrix of the goods, chattels and credits of Harry Marco, deceased, in the action heretofore brought in the Supreme Court, Kings County, aforesaid, and the futility of the making of a demand in the said original suit is alleged in Paragraph 25 hereof."

Paragraph 25 of the complaint alleges that no demand was made upon the board of directors of Blue Ridge "to bring the action, which was dismissed as aforesaid, for the relief appropriate to the facts alleged therein, because such a demand would have been vain and futile for the reasons hereinafter stated: * * *."

The complaint then sets forth subparagraphs "(a)" to "(m)," which are designed to show why the board would not have commenced an action if a demand had been made by the plaintiff for the commencement of the suit and why, if they had commenced such a suit, it would not have been conducted in good faith.

 The demand by the suing stockholder (or facts reasonably indicating futility of such demand) in a stockholder's derivative action is an essential or integral element or part of the cause of action. See Isaac v. Marcus, 1932, 258 N.Y. 257, 265, 179 N.E. 487; Craig v. James, 1st Dept.1902, 71 App.Div. 238, 241, 75 N.Y.S. 813; Watson v. Consolidated Laundries Corporation, 2d Dept. 1932, 235 App.Div. 234, 237, 256 N.Y.S. 891; Greaves v. Gouge, 1877, 69 N.Y. 154, 157; O'Connor v. Virginia Passenger & Power Company, 1906, 184 N.Y. 46, 52, 76 N.E. 1082; Flynn v. Brooklyn City Railroad Company, 1899, 158 N.Y. 493, 508, 53 N.E. 520; Godley v. Crandall & Godley Company, 1st Dept.1917, 181 App.Div. 75, 77, 168 N.Y.S. 251, affirmed 1920, 227 N.Y. 656, 126 N.E. 908; 1 White, New York Corporations (12th Ed. 1947) Para. 482.1, at p. 844. As such, the demand or futility thereof was an essential ingredient of the original cause of action that was dismissed. Conse-

quently, plaintiff is not now required to allege a new demand (or facts reasonably indicating futility of such demand) on any board of directors.

■ The New York courts have liberally construed Civil Practice Act, § 23. Titus v. Poole, supra; Gaines v. City of New York, 1915, 215 N.Y. 533, 539, 109 N.E. 594, L.R.A.1917C, 203; Sweeting v. Staten Island & Midland Railway Company, 2d Dept.1917, 176 App.Div. 494, 162 N.Y.S. 961; Buchholz v. United States Fire Insurance Company, 1st Dept.1945, 269 App.Div. 49, 51, 53 N.Y.S. 2d 608, appeal dismissed 1945, 294 N.Y. 807, 62 N.E.2d 239; Producers Releasing Corporation De Cuba v. Pathe Industries, supra. This Federal court is required to apply New York Law. Guaranty Trust Co. of N. Y. v. York, 1944, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

Moreover, New York courts have consistently refused to allow technicalities to defeat a stockholder's derivative action. See Holmes v. Camp, 1st Dept. 1919, 186 App.Div. 675, 679–680, 175 N.Y.S. 349, affirmed 1919, 227 N.Y. 635, 126 N.E. 910; Weinert v. Kinkel, 1947, 296 N.Y. 151, 152, 71 N.E.2d 445, 172 A.L.R. 688.

Compliance With F.R.Civ.P. rule 23(b)

■ The complaint herein fully complies with F.R.Civ.P. rule 23(b). As already noted, futility of demand on the board of directors was properly alleged in the state court complaint and is properly realleged in the complaint herein.

All of the other requirements of rule 23(b) as to verification and special averments are satisfied by the present complaint.

■ Because there are pleaded averments of antagonism, adverse interest and illegality, there is no need to allege a demand on the other shareholders or, alternatively, additional reasons for plaintiff's not making a demand on the other shareholders.

The Court of Appeals for this circuit · has taken the position that, where the directors and controlling shareholders are antagonistic, adversely interested or involved in the transaction attacked, a demand on them is presumably futile and need not be made. See Cathedral Estates, Inc. v. Taft Realty Corporation, 2 Cir., 1955, 228 F.2d 85, 88. Since then, the requirements of the Delaware Court of Chancery have been interpreted as dispensing with the necessity of a demand on other shareholders where facts are alleged showing that fraud or illegality on the part of the offending directors was involved. Mayer v. Adams, Del., 141 A. 2d 458, 465; Campbell v. Loew's Incorporated, Del.Ch.1957, 134 A.2d 565, 567. Cf. Keenan v. Eshleman, 1938, 23 Del.Ch. 234, 2 A.2d 904, 909, 120 A.L.R. 227.

Furthermore, in 1936, when the original action was commenced, the laws of Delaware (the state of incorporation of Blue Ridge) did not require a demand on other shareholders as a condition precedent to a stockholder's derivative action. See Mayer v. Adams, Del.1958, 141 A.2d 458, 462.

Plaintiff Has Standing to Sue as an Equitable Shareholder

The facts already summarized demonstrate that plaintiff is an equitable shareholder of Realization and Mutual.

■ A shareholder need not be a shareholder of record in order to institute and maintain a stockholder's derivative action. As an equitable owner of stock in a corporation, i. e., a non-record or equitable stockholder, he may maintain a derivative action under the laws of New York [Law v. Alexander Smith & Sons Carpet Company, 1st Dept.1947, 271 App.Div. 705, 706, 68 N.Y.S.2d 148; Braman v. Westaway, Sp.T.New York Co.1945, 60 N.Y.S.2d 190, 196, not officially reported; Croen v. Gottlieb, Sp.T. Westchester Co.1957, 8 Misc.2d 628, 631, 166 N.Y.S.2d 278] and Delaware [Rosenthal v. Burry Biscuit Corporation, 1948, 30 Del.Ch. 299, 60 A.2d 106, 111–113; Gamble-Skogmo, Inc. v. Saks, Del.1956, 122 A.2d 120, 121; Helfand v. Gambee, Del.Ch.1957, 136 A.2d 558, 561].

The Federal courts considering the problem are in accord [Hurt v. Cotton

States Fertilizer Co., 5th Cir., 1944, 145 F.2d 293, 295, certiorari denied 1945, 324 U.S. 844, 65 S.Ct. 679, 89 L.Ed. 1406; Gallup v. Caldwell, 3 Cir., 1941, 120 F.2d 90, 93; Craftsman Finance & Mortgage Co., Inc. v. Brown, D.C.S.D.N.Y.1945, 64 F.Supp. 168, 175–176, Leibell, J.; Willcox v. Harriman Securities Corporation, D.C.S.D.N.Y.1933, 10 F.Supp. 532, 535, Patterson, J.]. See 13 Fletcher Cyclopedia Corporations (1943 Rev.Ed.), section 5976; Note, Multiparty Litigation in the Federal Courts, 71 Harv.L.Rev. 874, 950 (1958).

Thus, under the law of the state of incorporation of the corporations involved here, as well as the law of New York, the standing of an equitable shareholder to maintain a derivative action is recognized.

### Plaintiff's Status Unaffected by the Assignment and Merger

 The fact that Blue Ridge no longer has an interest in this action is immaterial. Realization, which is the party to be benefited by this action, is before the court and is supporting plaintiff's position.

Defendants' argument is based, in the main, on the circumstances that Blue Ridge has assigned its interest in this action to Realization, and that Blue Ridge has been merged into Mutual. This argument overlooks the critically important fact that Realization is the owner of the cause of action and that all of the Blue Ridge stockholders now have precisely the same interest in the cause of action as shareholders of Realization that they had when they were shareholders of Blue Ridge. Defendants are emphasizing form over substance.

Defendants' argument that a Blue Ridge shareholder cannot maintain this action because Blue Ridge has been merged out of existence overlooks the fact that plaintiff and other similarly situated Blue Ridge shareholders are shareholders of Realization (which is the assignee of the cause of action) and of Mutual (which is Blue Ridge's successor). As already noted in some detail (supra, 177 F.Supp. 541), the New York courts have conclusively determined that the rights of plaintiff's intestate accrued prior to the assignment and merger and that the cause so accrued survived the assignment and merger. Marco v. Sachs, Sp.T.Kings Co.1951, 201 Misc. 934, 109 N.Y.S.2d 226, affirmed 2d Dept.1952, 279 App.Div. 1085, 113 N.Y.S.2d 449, affirmed 1953, 304 N.Y. 912, 110 N.E.2d 737.

### The State Judgment of Dismissal Was not "Upon the Merits"

 Defendants contend that the judgment entered January 7, 1958 was "upon the merits" and also amounted to a judgment *pro confesso*. These contentions are without merit.

The judgment of January 7, 1958 and the order of January 3, 1958 (upon which the judgment was entered) were based solely upon Ida's wilful failure to appear for examination before trial as required by notices and court orders. In addition, there is conspicuously absent from the judgment or order upon which it was entered, a recital that it was rendered upon the merits. Such a recital would have been required under section 482 Civil Practice Act if the court or the defendants had intended the judgment to be a final judgment upon the merits. The dismissal for plaintiff's failure to submit to a pre-trial examination effected by the judgment of January 7, 1958 is not to be distorted by implication into a dismissal "upon the merits" in the face of Civil Practice Act, section 482. The judgment of January 7, 1958 and the order of January 3, 1958, upon which that judgment was entered, articulate the grounds upon which the state action was dismissed. This court may not go behind that judgment and order for the purpose of hypothesizing other grounds of dismissal which would radically alter the legal consequences of the judgment and order as signed by the state court.

In this equitable action upon the record here presented, the court would not be justified in straining to find a ground summarily to dispose of this litigation.

Civil Practice Act, § 23 preserves to plaintiff the right to an "adjudication of the substance or merit of his cause" in a "new action for the same cause" when, as here, it was timely commenced. See Buchholz v. United States Fire Insurance Company, supra, 269 App.Div. at page 51, 53 N.Y.S.2d at page 610.

This court's decision and opinion do not constitute an expression of any view concerning the substantive merit of plaintiff's claim.

Defendants' motions are denied for the reasons set forth herein. Settle order accordingly, within five days from the date hereof.

### Memorandum

 Upon the settlement of the order herein, defendants have made a request under The Interlocutory Appeals Act of 1958, Title 28 U.S.C.A. § 1292(b), that this Court make a written statement "that it is of the opinion that this order involves controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation."

The Court hereby denies defendants' request for the following reasons:

1. In the Court's opinion, there are no substantial grounds for differences of opinion as to the controlling questions of law.

2. The Court held the motion in chief under advisement for about six months because (a) the record of the state court litigation commenced in 1936 was voluminous; (b) the factual complexities of the questions posed by the motion in chief were compounded by the partisan presentation of the facts by the moving and opposing counsel; (c) non-controlling legal issues were proliferated; and (d) the Court's time and attention were preempted by the demands of other and more pressing judicial business consisting principally of the trial of cases.

3. The circumstances of the case at bar do not measure up to the exacting criteria recently expounded by the Court

of Appeals for this circuit applicable to the certification by a district judge under the Interlocutory Appeals Act. Gottesman v. General Motors Corporation, 2 Cir., June 18, 1959, 268 F.2d 194. Cf. Marco v. Dulles, 2 Cir., June 22, 1959, 268 F.2d 192.

This memorandum shall constitute an order.