**EADS HIDE & WOOL COMPANY,**
Appellant,

v.

**L. B. MERRILL,** Appellee.

No. 5656.

United States Court of Appeals
Tenth Circuit.

Jan. 22, 1958.

A. T. Hannett, Albuquerque, N. M. (Ben P. Monning, Amarillo, Tex., G. W. Hannett and T. G. Cornish, Albuquerque, N. M. on the brief), for appellant.

John D. Robb, Albuquerque, N. M. (Smith & Smith, Clovis, N. M., and Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., on the brief), for appellee.

Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This action was instituted in the United States District Court for the District of New Mexico on the basis of diversity of citizenship by a complaint alleging a right to recover damages for conversion of a shipment of hides or for money had and received wrongfully. It is a final attempt by appellant to recover losses incurred by it upon the bankruptcy of Hubert Chapman, with whom each of the parties to this action formerly dealt in the conduct of their individual hide businesses. The trial court, upon appellee's motion, granted summary judgment against appellant of no cause of action. The factual background, though undisputed, is, as termed by the trial court, "most complex."

On March 12, 1952, L. B. Merrill entered an agreement with Hubert Chapman which described their relationship as "employer-employee" and provided that Merrill would place $50,000 at Chapman's disposal in a bank account to be known as "L. B. Merrill Hide Account" which Chapman should use as necessary for the purchase and sale of hides at his plant in Clovis, New Mexico. Chapman was to furnish warehouse space and insurance for the hides and use his business experience to make the venture profitable, for which he was to receive a commission of one-half of all profits.

Mr. Ernest H. Eads, president of Eads Hide & Wool Company,·had bought from, and occasionally sold to, Hubert Chapman for a period of about twenty-five years. Chapman had the power to draw drafts on Eads Hide & Wool Company for hides and wool which he routed in transit to the Eads Warehouse. However, there were a number of instances where, after Chapman had drawn a draft on Eads, he later sent a check to cover the amount drawn instead of shipping the goods promised. According to his testimony Eads protested this practice, but the float transactions continued up to and including the incidents giving rise to the claims now asserted by appellant.

On October 27, 1952, Chapman drew a draft on Eads Hide & Wool Company for $25,000 and October 29, 1952, he drew another draft on the company for $9,000. These drafts were supposedly to cover a prepayment to Globe Packing Company in Los Angeles for hides for Eads account. Such hides were never shipped. Also on October 27th, Chapman sent Eads a check against his account in the amount of $25,025.62, explaining that he had unloaded the hides at Clovis, New Mexico, by mistake and could not ship them on. The check was not honored on presentment. Two other checks in amounts of $10,928.46 and $10,982.70 issued to Eads by Chapman were also dishonored.

Realizing that he could not obtain hides which were supposedly bought for the Eads Company's benefit with these funds, Mr. Eads and his attorney negotiated with Chapman for payment on the dishonored checks. Chapman surrendered a 1950 Packard automobile, for which Eads credited him $4,000, an assignment of an account receivable for $8,804, and a promissory note for $44,000 secured by a second mortgage on Chapman's warehouse.

The two drafts for $25,000 and $9,000 were returned to appellant with an endorsement over to the L. B. Merrill Account, and, upon this fact, and the agree-

ment between Merrill and Chapman, the complaint alleges a partnership as to this account and a conversion of the hides by the partnership or, in the alternative, that the proceeds of these two drafts were received wrongfully by the partnership. The instant suit against Merrill followed the release by Eads, in settlement of a preference suit by the trustee of Chapman's bankrupt estate against him, of the mortgage security given him by Chapman.

Case No. 2022, Bankruptcy of Hubert Chapman.

Chapman filed a voluntary petition in bankruptcy on November 24, 1952. Appellant Eads Company and the trustee in bankruptcy filed a petition in that action alleging that L. B. Merrill was a general partner in the Hubert Chapman Hide Company and that he had sequestered and converted to his own use a substantial portion of the bankrupt partnership's assets. L. B. Merrill by motion to dismiss and by answer denied the allegations of general partnership, alleging:

"That if a partnership existed at all, which is specifically denied, that it was at most a separate and distinct undertaking between L. B. Merrill and Hubert Chapman individually and therefore that L. B. Merrill was not a general partner of the Hubert Chapman Hide Company, composed of Hubert Chapman and Letha Chapman, partners. That this court has no jurisdiction over the alleged business undertaking between said L. B. Merrill and Hubert Chapman since neither a voluntary nor involuntary petition complying with the requirements of the Federal Bankruptcy Act has been filed in this court with respect to the alleged separate undertaking between said L. B. Merrill and Hubert Chapman."

Judgment that Merrill was not a general partner of Chapman and his wife in the Hubert Chapman Hide Company was entered on this petition.

L. B. Merrill filed a claim in the bankruptcy action for $149,000 for money or hides belonging to the L. B. Merrill account and allegedly converted by Chapman. Eads Hide & Wool Company filed proof of claim against the bankrupt estate for $45,000.

Case No. 2320, Preference Suit Against Eads Hide & Wool Company.

After bankruptcy proceedings were instituted, the trustee brought a preference suit against the Eads Hide & Wool Company to redeem the payments and security made to that company just prior to bankruptcy. The case was settled by stipulation between the trustee and Eads whereby the Eads Company released its mortgage on the Chapman warehouse and paid $1,000 to the trustee. In this case Eads Hide & Wool Company had joined L. B. Merrill as a third party defendant alleging that he was a partner of Chapman.

Case No. 2285, Preference Suit Against Merrill.

The trustee then instituted a suit seeking a judgment that L. B. Merrill be required to disgorge preference payments in the amount of $76,000. A compromise agreement was reached whereby L. B. Merrill waived his claim to $149,000 in the bankruptcy proceeding and consented to judgment against him in the amount of $17,500.

Meeting of Creditors.

Notice was given to all creditors including Eads Hide & Wool Company of a meeting of creditors and hearing for approval of the proposed settlements, among which were cases Nos. 2320 and 2285.

After approval of the action in settlement taken by the trustee, moneys in the bankrupt's estate were distributed with Eads Hide & Wool Company participating as a general creditor of the bankrupt.

When Eads Hide & Wool Company attempted to try the issue of whether L. B. Merrill was a partner of Chapman to the extent of the goods and money in the L. B. Merrill account in this action, the trial court held that (1) by entering an agreement with Chapman and accepting the promissory note and security, the au-

tomobile and chose in action, Eads Company was estopped to bring this action by reason of merger, accord and satisfaction, and election of remedies; (2) by reason of the trustee's preference suits, Nos. 2320 and 2295, the matter is res adjudicata; and (3) because the questions here involved should have been raised by objection to the settlement with Merrill, plaintiff is judicially estopped to now raise them.

The common law doctrine of regarding a partnership as an entity for the purpose of distribution of assets in bankruptcy by giving priority to the creditors of either the partnership or the individual according to the method by which the debt was contracted has been recognized in Section 5 of the Bankruptcy Act, 11 U.S.C.A. § 23. If it is an individual debt, then the individual creditors have preference over the firm claimants; if it is a partnership debt, the partnership creditors have a preference. International Agr. Corp. v. Cary, 6 Cir., 240 F. 101. The appellant company participated as a general creditor of Chapman individually and as a general creditor of Hubert Chapman Hide Company, a partnership, both adjudicated bankrupt. The appellant accepted as an individual creditor dividends pro rata with other creditors of Chapman; it ratified, through the creditors' meeting, the action of the trustee in settling the preference claim against L. B. Merrill.

The appellant justifies this action by claiming that its cause of action is joint against the partners individually and the alleged partnership. It maintains that it had two causes of action and did not make an election of remedies because it has never recovered the full $34,000 paid to Chapman which, it alleges, appellant received.

To be sure, a person other than the bankrupt is not relieved generally from liability, where liability exists on the part of both the bankrupt and the other, by the filing of proof of claim, its allowance, and the acceptance of a dividend from the bankrupt estate. Parkerson v. Borst, 5 Cir., 264 F. 761; Mitchell v. Hampel, 276 U.S. 299, 48 S.Ct. 308, 72 L.Ed. 582. But in the present case appellant's participation in the assets of the bankruptcy were occasioned by a claim against Chapman as an individual; appellee's rights and duties, both in settlement of case 2285 and in acquiescing in case 2320, were similarly premised upon the position adopted by appellant throughout the bankruptcy proceedings. Appellant now seeks to refute that position. If allowed to prevail, the earlier equitable distribution of the bankrupt's assets would be aborted to the detriment of creditors including but certainly not limited to appellee.

Demonstrating the problems involved by the possible allowance of the assertion of a quasi-contract right against the bankrupt partner and the same right against the bankrupt partnership, is the leading case of Schall v. Camors, 251 U.S. 239, 40 S.Ct. 135, 138, 64 L.Ed. 247, wherein the court, disallowing the claim as to the individual estate, stated:

"* * * But as the basis of a liability of this character is the unjust enrichment of the debtor, and as the facts show that no benefit accrued to the individuals as a result of the frauds beyond that which accrued to the firm, the logical result of the argument is that out of one enrichment there may arise three separate and independent indebtednesses. Doubtless it would be conceded that a single satisfaction would discharge all of the claims; but we are dealing with a situation where by reason of insolvency it is not to be presumed that claims will be satisfied in full; and, as already pointed out, the effect of sustaining the right to double proof would be to give petitioners not only a right to share in the partnership assets on equal terms with other partnership creditors, but a participation in the individual assets on equal terms with other individual creditors and in preference to other partnership creditors. Section 5 of the Bankruptcy Act * * * establishes on

a firm basis the respective equities of the individual and firm creditors. Hence the distinction between individual and firm debts is a matter of substance, and must depend upon the essential character of the transactions out of which they arise. And since in this case the tort was done in the course of the partnership business, for the benefit of the firm and without benefit to the partners as individuals, no legal or equitable claim as against the individuals that might be deemed to arise out of it, by waiver of the tort or otherwise, can displace the equities of other creditors, recognized in the Bankruptcy Act, and put petitioners in a position of equality with others who actually were creditors of the individual partners, and of preference over other firm creditors."

To the same effect, see Reynolds v. New York Trust Co., 1 Cir., 188 F. 611, 39 L.R.A.,N.S., 391.

 Related to the doctrine of election of remedies or rights, but based upon an inconsistency of position rather than a selection of means of enforcing a right, is a phase of equitable estoppel which prevents a litigant from maintaining that the facts of his suit are different from those which he urged successfully in prior litigation. Davis v. Wakelee, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578; Queenan v. Mays, 10 Cir., 90 F.2d 525; Conklin v. Cunningham, 7 N.M. 445, 38 P. 170; Armijo v. Town of Atrisco, 56 N.M. 2, 239 P.2d 535. Where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. In re Maddison, 32 N.M. 252, 255 P. 630.

 Appellant has formerly asserted a right to share in the individual estate of a bankrupt partner on an equal basis with other individual creditors. He has

acquiesced in the amounts settled between Merrill and the trustee in bankruptcy as conveyances made in preference to Merrill as a creditor of Chapman. He has attempted to show that a partnership existed as to Merrill in the Hubert Chapman Hide Company and failed. Although by answer, Merrill pointed up the possibility of trying the question of whether or not a partnership existed as to the L. B. Merrill account, appellant did not pursue it but contented itself with sharing with other individual creditors, including Merrill, in the bankrupt estate. Having thus recognized Merrill as a creditor of the Chapman estate and having thus declared itself to be a creditor of Chapman individually through its acceptance of dividends to the detriment of other general creditors, it must be held to be estopped to now claim that the obligation due it was a partnership obligation.

In the case of Swofford Bros. Dry Goods Co. v. Owen, 37 Okl. 616, 133 P. 193, 197, L.R.A.1916C, 189, the plaintiff claimed against a corporation in bankruptcy, received dividends from its estate, and then brought suit against certain stockholders as partners liable for the remaining amount due. The court stated:

"Even though plaintiff may have had the right, based upon the alleged representations made by the alleged partners, to proceed against them individually, yet having elected, with full knowledge of the facts, to proceed against the corporation by filing its claim with the trustee, and participating in and accepting the dividends of the corporation, it thereby waived its right to hold the defendants as individuals. Having made an election between two courses, with knowledge of the facts, it waived the one not chosen. The positions assumed by it are inconsistent."

Although this case involved a corporation, whose existence and liability would protect its shareholders from personal liability if the debt was corporate, the philosophy of the Bankruptcy Act to re-

gard a partnership as an entity for the purpose of distribution of assets makes this holding on estoppel relevant to the present case. The positions assumed are inconsistent and the detriment incurred by general creditors by reason of the failure of the Eads Company to raise the question it now urges before the bankruptcy court estops it from asserting that its debtor was a partnership rather than an individual.

To the same effect is Clapp & Son, Inc., v. Knorr, 106 Kan. 733, 189 P. 936, 937, where it was held that creditors of a conditional buyer accepting dividends in bankruptcy could not later resort to the seller as the principal debtor. As here, the defendant in the second suit was accepted by other creditors of the bankrupt as a creditor in the bankruptcy suit and the court held:

"* * * With knowledge of the contract relations between Reinhart and Knorr, it [plaintiff] joined with Knorr, in electing a referee in bankruptcy and in procuring an adjudication that it and Knorr were both creditors of Reinhart. That adjudication determined the status of the parties, that the claims of the plaintiff were the debts of Reinhart, and that Knorr was a creditor upon a plane with itself. Even if Knorr might have been regarded in the first instance as principal, and Reinhart as his agent, the plaintiff, having proceeded against Knorr as the owner of the goods, and the principal debtor, with full knowledge of the facts, is bound by its election * * The question whether Knorr was a debtor or creditor was a material issue in the bankruptcy proceeding and the adjudication there made establishes the fact that he was a creditor of Reinhart * * * The plaintiff, having procured the adjudication with knowledge of the contract relations, and having accepted dividends from the estate on that theory, is precluded from shifting its position and asserting that Knorr is a principal and a debtor."

See also Shonkweiler v. Harrington, 102 Neb. 710, 169 N.W. 258.

Under the circumstances of this case, the trial court was correct in holding the appellant judicially estopped to bring this suit.

Affirmed.