**TEAMSTERS LOCAL NO. 25, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Plaintiff,**

v.

**PENN TRANSPORTATION CORP., Defendant.**

**Civ. A. No. 72–1972–T.**

United States District Court, D. Massachusetts.

May 21, 1973.

Grady & Kaplan, James T. Grady, Boston, Mass., for plaintiff.

Paul J. Kingston, Thompson & Kingston, Boston, Mass., for defendant.

## OPINION

TAURO, District Judge.

Plaintiff-union seeks enforcement of an award rendered by a joint employee-employer grievance committee. The defendant-employer resists enforcement asking that the award be vacated. Jurisdiction exists under § 301(a) of the Labor Management Relations Act of 1947 as amended, 29 U.S.C. § 185. The matter is now before the court upon cross motions for summary judgment accompanied by an Agreed Statement of Facts.

The plaintiff, Teamsters Local No. 25, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter "Local 25"), a labor organization within the meaning of 29 U.S.C. § 185, is the collective bargaining representative for approximately seventeen truck drivers, warehousemen, helpers and mechanics employed by the defendant.

The defendant, Penn Transportation Corp., (hereinafter "Penn") is a Massachusetts corporation engaged in an industry affecting commerce within the meaning of 29 U.S.C. § 185.

On July 12, 1971, Penn and Local 25 executed a document which, by its terms, has been in effect at all times material and is due to expire on June 30, 1973. The document signed was entitled The National Master Freight Agreement and New England Supplemental Freight Agreement (hereinafter "The Master Agreement" and "The Supplemental Agreement").

The parties also signed on July 12, 1971, a document entitled Amendment of New England Supplemental Freight Agreement (hereinafter "The Amendment"). The Amendment stipulated that the Master Agreement and Supplement Agreement would be modified by eliminating Articles 1 through 39 of the Master Agreement and by modifying Articles 40 through 67 of the Supplemental Agreement. Each of the agreed changes concern the collective bargaining agreement.

On March 30, 1972, Penn sent each of its employees, represented by Local 25, a letter giving notification of the closing of Penn's Chelsea, Massachusetts opera-

tions and informing the employees that their "services are no longer needed henceforth."

Thereafter Local 25 alleging that Penn had violated their collective bargaining agreement by failing to give thirty (30) days notice of closing operations as required by Article 40, Section 3,[1] submitted the dispute to the New England Joint Area Committee (hereinafter "the Committee") for resolution pursuant to the grievance machinery established by Articles 45 and 46 of the collective bargaining agreement.[2]

A hearing before the Committee scheduled for April 20, 1972, was postponed at Penn's request. The Committee rescheduled the hearing for May 17, 1972 and Penn, although notified, failed to appear or sign the formal submission papers. The hearing proceeded ex parte with only Local 25 in attendance.

On May 24, 1972, Local 25 was advised that the Committee had made the following decision: "The Company is in violation of Article 40, Section 3 of the New England Freight Agreement by not giving the Local Union 25 thirty (30) days notice." The decision failed to provide a remedy of any kind against Penn and did exhaust the contractual remedies available to Local 25 at that time.

Since on or about May 20, 1972, Local 25 has been informed that Penn has removed some of its trucks and other vehicles to New Hampshire for storage. Penn trucks have regularly been seen in various market areas, including the Chelsea produce market, engaged in the transportation of goods and produce and operated by drivers who are not members of the bargaining unit represented by Local 25. The trucks also have been observed being serviced at Penn's Chelsea terminal by mechanics not in the bargaining unit represented by Local 25.

Local 25, alleging that Penn's conduct described in the above paragraph violated Article 43, Section 2, paragraphs (b)(1) and (2) [3] and Article 44, Section

---

1. Article 40, Section 3: "If the Employer contemplates opening or closing any terminal within the jurisdiction of the fifteen Local Unions listed on the title page hereof, he shall notify the Local Unions at least thirty (30) days prior to making such change."

2. Article 45, Section 1: "The Operators and the Unions shall together create a permanent New England Joint Area Committee, hereinafter referred to as the Joint Area Committee, composed of the following Local Unions: 25, 42, 59, 170, 191, 251, 404, 437, 443, 493, 526, 653, 671, and 677. The Joint Area Committee shall consist of an equal number appointed by Employers and Unions but no less than three (3) from each group. Each member may appoint an alternate in his place. The Joint Area Committee shall at its first meeting formulate rules of procedure to govern the conduct of its proceedings. The Joint Area Committee shall have jurisdiction over disputes and grievances involving Local Unions or complaints by Local Unions participating in such Committee. This Joint Area Committee shall meet at established times and at a mutually convenient location."
 Article 46, Section 1: "The Union and the Employers agree that there shall be no strike, lockout, tie-up, or legal proceedings without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise. Disputes shall first be taken up between the Employer and the Local Union involved. Failing adjustment by these parties, the following procedure shall then apply:
 "(a) Where the New England Joint Area Committee by a majority vote, settles a dispute, no appeal may be taken to the Eastern Conference Joint Area Committee. Such a decision will be final and binding on both parties." . . .
 "(e) Failure of the Joint Committee to meet without fault of the complaining side, refusal of either party to submit to or appear at the grievance procedure at any stage, or failure to comply with any final decision withdraws the benefits of this Article."

3. Article 43, Section 2(b): "(1) When a branch, terminal, division or operation is closed and the work of the branch, terminal, division or operation is eliminated an employee who was formerly employed at another branch, terminal, division or operation shall have the right to transfer back to such former branch, terminal, division or operation into which he is transferring provided he has not

1 [4], filed suit in this court before Judge Campbell. The "Complaint for Breach of Contract and Injunctive Relief" prayed for a temporary restraining order enjoining Penn from selling, transferring, assigning, encumbering or otherwise disposing of or reducing its equity in its trucks or other vehicles and in any of its real estate pending determination of the case. Local 25 further requested damages in contract and tort reflecting all monetary losses to the union and the employees represented by it. Judge Campbell issued the temporary restraining order requested.

After a full hearing, Judge Campbell issued a preliminary injunction enjoining Penn "from intentionally taking any action (such as the transfer or concealment of Penn's assets or otherwise), which is designed or is likely to render Penn incapable of complying with any award made pursuant to the collective bargaining agreement dated July 21, 1971 . . . ." Judge Campbell further directed the parties to pursue resolution of the contractual disputes under the grievance procedures of the collective bargaining agreement.

Thereupon, the parties by agreement presented their dispute to the Committee. After conducting a full hearing on October 19, 1972, the Committee rendered a decision in favor of Local 25, ordering reinstatement of the employees and payment of back pay and benefits.

On November 1, 1972, Local 25 advised Penn that the employees concerned were willing and able to return to work and asked Penn to comply with the award. Penn refused and continues to this day to comply with the award.

Upon Penn's refusal to comply, Local 25 moved to amend the complaint praying for enforcement of the Committee's award. Penn opposed the motion to amend arguing that Local 25 should be required to commence a new and separate action for enforcement. After a hearing, this court allowed Local 25's motion, treating it as a motion to file a supplemental complaint rather than a motion to amend.[5] Thereafter the parties filed cross motions for summary judgment.

Penn challenges the award on three theories: 1) the executed collective bargaining agreement was not a binding contract; 2) the doctrine of res judicata defeats enforcement of the award; 3) the award is vague and ambiguous and thus unenforceable as it now stands.

As the *Steelworkers triology* emphasizes, labor arbitration is a vital organ in the body of federal labor law. "[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581, 80 S.Ct.

been away from such original terminal for more than two years."

"(2) When a branch, terminal, division or operation is closed or partially closed and the work at the branch, terminal, division or operation is transferred to another branch, terminal, division or operation in whole or in part, an employee at the closed or partially closed down branch, terminal, division or operation shall have the right to transfer to the branch, terminal, division or operation into which the work was transferred if regular work is there available."

4. Article 44, Section 1: "During the term of this Agreement or any renewal thereof, the Employer shall not directly or indirectly operate, maintain or conduct any

establishment or place of business, or cause any establishment or place of business to be operated or maintained or conducted where the effect thereof is to render the terms of this Agreement inapplicable for the purpose of evading the terms of this Agreement."

5. Under Fed.R.Civ.Pro. 15 amendments of pleadings usually consist of alterations based upon facts or legal claims existing at the time the original pleading was filed. 3 Moore, Fed.Pract. ¶ 15.08 [3], pp. 887–90. In contrast, a supplemental pleading brings a controversy up to date, introducing newly occurring facts which enlarge or change the relief sought in the original complaint. 3 Moore, Fed.Pract. ¶ 15.16 [1] pp. 1081–82.

1347, 1352, 4 L.Ed.2d 1409 (1960). National policy favors the settlement of labor disputes arising out of collective bargaining agreements through the utilization of grievance machinery established by the parties to the agreement. This policy is served only when the method of settlement chosen by the parties is given full play. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Thus a court reviewing an arbitration award rendered pursuant to a collective bargaining agreement may not review the merits of the award; for to do so would undermine our national policy. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ Though the scope of judicial review of such awards is narrow, a court will not merely rubber stamp its approval. A court will refuse enforcement if the award fails to draw its essence from the collective bargaining agreement. *Enterprise Wheel, supra,* at 597, 80 S.Ct. 1358. A court may examine whether the agreement conferred jurisdiction upon the arbitrator. Camden Industries Co. v. Carpenters Local Union No. 1688, 353 F.2d 178, 180 (1st Cir. 1965).

■ The burden, however, is on the party resisting enforcement. Given the national policy favoring labor arbitration, courts are reluctant to withhold enforcement of labor arbitration awards. Lodge No. 725, Int. Ass'n of Mach. v. Mooney Aircraft, Inc., 410 F.2d 681, 683 (5th Cir. 1969).

Penn's first contention is that the collective bargaining agreement executed on July 12, 1971, is not a binding contract because "it was procurred by coercion including the pressures of an unlawful secondary boycott." [6]

■ Arbitration is a contractual matter. United Steelworkers of America v. Warrior & Gulf Navigation Co.,

363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Thus in order for an arbitration award to be enforceable it must draw its essence from the contract. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). It follows that an award cannot be enforced against a party who was not bound by the collective bargaining agreement authorizing the arbitration. See e. g., Local Union No. 11, IBEW v. Jandon Electric Co., 429 F.2d 584 (9th Cir. 1970); Joint Board of Cloak, Skirt & Dressmakers Union v. Seneco, Inc., 289 F.Supp. 513, 525, 527 (D.Mass. 1968). When a party asserts it is not bound by an alleged collective bargaining agreement, or an award issued thereunder, a court usually must adjudicate the claim. Bricklayers, Masons, M&T Set. No. 7 v. Lueder Const. Co., 346 F.Supp. 558, 562 (D.Nebraska 1972). However, for the reasons set forth below, Penn is estopped from renouncing at this late date its obligations under the executed collective bargaining agreement.

As the Supreme Court has stated "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895). See Roth v. McAllister Bros., Inc., 316 F.2d 143, 145 (2d Cir. 1963); Eads Hide & Wool Company v. Merrill, 252 F.2d 80, 84 (10th Cir. 1958); Sinclair Refining Co. v. Jenkins Petroleum Process Co., 99 F.2d 9, 13 (1st Cir. 1938); Smith v. Boston Elevated Ry. Co., 184 F. 387, 389 (1st Cir. 1911). See generally, 1 B Moore, Fed. Practice ¶ 0.405 [8].

Penn's attempt to vitiate the collective bargaining agreement is inconsistent

---

6. Defendant's Memorandum in Opposition to Motion to Amend Complaint, p. 2.

with its prior position before Judge Campbell.

An examination of Penn's anwer to the original complaint reveals that Penn admitted the contract was binding at execution. Paragraph 6 of Local 25's complaint states "On July 12, 1971, the Employer and the Union signed a collective bargaining agreement which by its terms and by agreement of the parties has been in effect at all times material and is due to expire by its terms on June 30, 1973." Penn's answer (Paragraph 6) admitted "all of the allegations contained in Paragraph 6 of the Complaint except that Defendant denies that the collective bargaining agreement has been in effect at all times material subsequent to July 12, 1971." The answer, while denying the contract was in effect at all times *subsequent* to July 12, 1971, acknowledges it was in effect by agreement of the parties *on* July 12, 1971, the date of execution. Penn's present claim assails the execution of the collective bargaining agreement, a direct contradiction of its prior position.

Furthermore, Penn positively asserted the initial validity of the agreement. In its fourth affirmative defense to the original complaint, Penn states "Plaintiff failed to satisfy a condition precedent to bringing its Complaint, to wit exhausting the contractual grievance machinery . . . ". Penn argued before Judge Campbell that " . . . Plaintiff was contractually committed to submit the dispute through the grievance machinery of the collective bargaining agreement . . . ."[7]

Judge Campbell accepted Penn's position and in effect stayed action on the complaint, directing Local 25 to submit the dispute to the grievance committee. Penn may not now question the validity of the collective bargaining agreement merely because the decision of the Committee thereunder was adverse.

■ Additionally, the nature of the duress defense is incompatible with Penn's prior choice to go to arbitration under the contract. A contract executed under unlawful coercion is not void but only voidable. The contract may be subsequently ratified and affirmed. The coerced party must elect to rescind and challenge the contract within a reasonable time. Lewis v. Gilchrist, 198 F. Supp. 239, 242 (N.D.Ala.1961); Lewis v. Mill Ridge Coals, Inc., 188 F.Supp. 4, 8–9 (E.D.Ky.1960), affirmed on other grounds, 298 F.2d 552 (6th Cir. 1962); Lewis v. Kerns, 175 F.Supp. 115, 118–119 (S.D.Ind.1959).

■ If Penn was unlawfully coerced into executing the collective bargaining agreement, a more prompt repudiation was due. At the very latest, Penn was required to assert its claim of coercion and to renounce its obligations when Local 25 first filed suit seeking enforcement of its contractual rights. See Lewis v. Lowry, 322 F.2d 453, 456 (4th Cir. 1963).

Penn next asks the court to invoke the principle of *res judicata* to deny enforcement of the award. Penn asserts that Local 25 has had "two bites of the apple." The gist of the argument is that the first award which cited Penn for violation of Article 40, but which failed to provide a remedy, was a final and binding determination of Penn's liability arising from closing the Chelsea terminal.

Assuming *res judicata* may be invoked to bar enforcement of a subsequent labor arbitration award, Todd Shipyards Corporation v. Industrial Union of Marine and Shipbuilding Workers, 242 F. Supp. 606 (D.N.J.1965), the facts here do not warrant its application.

■ The first grievance filed concerning Article 40, Section 3 dealt with Penn's failure to give proper notice before closing its business operations at Chelsea. Only after the business was purportedly closed and after the Article 40 grievance had been filed and heard by the Committee, did Local 25 become

---

7. Defendant's Memorandum in Opposition to Request For Preliminary Injunction, p. 6.

**350**

aware of facts supporting the second grievance. Once aware that Penn was a "run away employer" remaining in business, Local 25 had grounds to file a grievance under Articles 43 and 44. These articles of the collective bargaining agreement provide for employee transfer rights and prohibit conduct evasive of contractual obligations. The two grievances, therefore, were based not only upon different contractual rights but also upon different factual issues. Hence the first award did not determine issues or facts foreclosing the second award. See Avco Corp. v. Local No. 787 of Int. U., U. A., A. & A. Imp. Wkrs., 459 F.2d 968, 973 (3rd Cir. 1972).

Lastly, Penn reasons even if the Committee had the authority to grant the award, the award should not be enforced because its remedial provisions are too vague.

The Committee rendered without opinion the following decision:

> "The panel rules—The Company is in violation Article 44, Section 1 and Article 43, Section 2, par. B–1 and 2. Men to be returned October 14th, 1972 to work. Company to pay all lost work less money earned and Company to pay Health & Welfare and pension."

Penn insists it is unable to implement the award because it fails to specify a) how the amount of back pay is to be calculated and b) where and how the employees should be returned to work. Penn maintains that these questions as to the meaning and application of the award should be remanded to the Committee for clarification.

 Penn's suggestion is well taken. It is now well established that ambiguities and uncertainties of labor arbitration awards should not be resolved by the court acting as interpreter. Rather the proper approach is to resubmit the award to its author for clarification. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Hanford Atomic Metal Trades

Council, AFL–CIO and C. L. v. General Electric Co., 353 F.2d 302, 307–308 (9th Cir. 1965); United Steelworkers of America, AFL–CIO v. Timken Roller Bearing Co., 324 F.2d 738 (6th Cir. 1963); International Ass'n of Machinists, AFL–CIO v. Crown Cork and Seal Co., 300 F.2d 127 (3rd Cir. 1962).

Accordingly the following order is to be entered:

1) Penn's Motion for Summary Judgment is denied.

2) Local 25's Motion for Summary Judgment is allowed subject to the following:

Within seven (7) days the parties are to initiate further proceedings before the Committee seeking clarification of the following:

(a) How and in what manner is the "Company to pay all lost work less money earned."

(b) How, where and under what circumstances are the "Men to be returned October 14th, 1972, to work."

Within fourteen (14) days following receipt of the Committee's clarification of its award as indicated, the parties shall request a further hearing before this Court for the purpose of implementing the issuance of a final order.