PETER BROWN, PLAINTIFF-RESPONDENT, v. MATLACK, INC., A CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY AND TRANS-CHEM EXPRESS, INC., A CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 9, 1978—Decided June 5, 1978.

Before Judges LYNCH, BISCHOFF and KOLE.

*Mr. G. Richard Malgran* argued the cause for appellants (*Messrs. Venezia & Nolan,* attorneys; *Mr. Richard S. Rebeck* on the brief).

*Mr. David Solomon* argued the cause for respondent (*Messrs. Schneider, Cohen & Solomon,* attorneys; *Mr. Martin List* on the brief).

The opinion of the court was delivered by

KOLE, J. A. D. Some five years after an arbitrator, pursuant to a collective bargaining agreement, had found that plaintiff had been discharged for just cause by his employer, the court below, after a hearing, determined that plaintiff had not been discharged for just cause by defendants Matlack, Inc. and Trans-Chem Express, Inc., and entered a judgment to the following effect: (1) plaintiff was ordered reinstated to his job; (2) he was to receive back pay, from the date Matlack first certified under oath in another proceeding (in which neither plaintiff nor his union was a party) that on February 14, 1972 he was not negligent in the operation of his vehicle, less compensation and disability benefits he had received during the period involved, and (3) the question of "back seniority" for plaintiff was "reserved." Defendants appeal.

Plaintiff is a truck driver. On February 14, 1972, while he was employed by defendant Trans-Chem, he was involved in an accident on one of the ramps of the New Jersey Turnpike. Prior to his employment with Trans-Chem plaintiff was employed by defendant Matlack, from 1968 to late 1970, when Matlack closed its terminal because of a labor dispute. Matlack reopened in 1971 but used Trans-Chem as its "fleet operator."

As a result of the February 1972 accident, plaintiff was discharged for cause — reckless operation of the vehicle resulting in a serious accident, a "violation of company rule #4." He filed a grievance, which went to binding arbitration under the collective bargaining agreement between his

union and his employer. The issue at the arbitration hearing at the offices of the New Jersey State Board of Mediation was: "Was Peter Brown discharged for just cause? If not, what shall be the remedy?"

Sickles and Hess, of Matlack's safety department, Solewin, owner of Trans-Chem, and Goetchius, the Trans-Chem terminal manager, testified at the arbitration hearing. Plaintiff also testified. His testimony to the effect that he was not negligent or responsible for the accident was supported by that of an eyewitness, Stella Kahora. She apparently corroborated plaintiff's claim that his truck was unexpectedly forced into the Turnpike guard rail by a speeding car that cut him off. It is evident that the arbitrator credited the evidence of the witnesses testifying on behalf of Trans-Chem and Matlack.

The arbitration opinion and award, dated May 25, 1972, found that plaintiff was "grossly guilty of violation of company rule number four" and had been discharged for just cause.[1]

In the opinion and award the arbitrator found that plaintiff was involved in an accident on February 14, 1972, while driving a company vehicle; that the accident caused an excessive amount of damage to the vehicle and to state and private property, and that plaintiff had been discharged by Trans-Chem[2] for violation of the company rule, by reason

---

[1] It is plain from the hearing in the trial court that Solewin of Trans-Chem did not credit plaintiff's version of how the accident occurred by reason, among other things, of the fact that a tach chart was missing. That chart would have indicated the speed at which the truck was travelling. Solewin did not believe that plaintiff had been cut off by a car and had concluded that even if the truck had been cut off, plaintiff would have been able to control it had he not been exceeding the speed limit. It was Solewin who discharged plaintiff. Hess, of Matlack, also refused to believe that plaintiff's negligence did not cause the accident for similar reasons, as well as the substantial damage to the turnpike.

[2] The "parties" in the arbitration proceeding were Trans-Chem and plaintiff's union, Local No. 469, I. B. T.

of "reckless operation resulting in a serious accident." The arbitrator's conclusion that plaintiff was discharged for just cause was based on the following:

1. Every truck driver knows he is supposed to be a defensive driver.

2. A woman witness testified that she observed from her home, several hundred feet away, that a car had speeded up and was about to cause an accident with the truck plaintiff was operating.

3. Plaintiff admitted he saw from the corner of his eye the car approaching at a fast speed.

4. Plaintiff testified he was driving his vehicle at 20 to 25 miles an hour, which would be within the posted speed for that area.

5. Plaintiff testified that it never entered his mind to apply the brakes.

6. If plaintiff was driving defensively, he could not "fail to control a vehicle going" 20 to 25 miles an hour.

7. "There can be no doubt" that plaintiff "lost complete control of his vehicle because he was driving at an excessive speed in an area calling for a careful approach. This * * * is why he failed to brake his vehicle after he saw the approaching car. This excessive speed also caused the property damage and vehicle damage."

8. Plaintiff "admitted he was careless in not noting the contents of his vehicle were" flammable.

9. Although plaintiff was unable to produce a witness he desired, "said witness did not see the accident" and plaintiff's testimony "lacked credibility."

In November 1974 the Turnpike Authority instituted an action against Matlack, claiming that extensive damage to its property resulted from Matlack's negligence in the February 1972 accident involving plaintiff. As part of discovery in that action Matlack, through its agent Wiley, certified, in answers to interrogatories, among other things, that the accident was not proximately caused by plaintiff's negligence

but rather was the result of improper design and construction of the Turnpike. In answers to one set of interrogatories Matlack referred to plaintiff as its employee; in another set he was described as Trans-Chem's employee. Matlack's version of how the accident occurred, as described in its certified answers, was similar to that to which plaintiff testified at the arbitration hearing — that is, he was travelling at about 25 miles an hour while exiting the Turnpike at a point when a new white car swerved towards his truck; that he swerved to avoid the car and, in so doing, "overturned," and that the damages were the result of an "unavoidable accident as far as [Matlack] is concerned." Matlack indicated, however, that it was awaiting an expert's report as to the negligent design and construction of the Turnpike. In November 1975 it received that report.[3] Additionally, depositions were taken in the action, in which plaintiff apparently testified, on behalf of Matlack, as to his lack of negligence.

However, despite the fact that the report of Matlack's expert could support a claim of defective design, after receipt of the Turnpike Authority's report, Matlack concluded that its position in that respect was weak. Accordingly, it settled the Authority's action by paying $51,000 damages and dismissed its counterclaim for damage to its vehicle.

The present action was commenced on or about October 20, 1976, when plaintiff filed a complaint seeking, among other things, (1) vacation of the arbitration award of May 25, 1972; (2) reinstatement to his job as a truck driver with Trans-Chem, and (3) back pay. Plaintiff maintained that Trans-Chem and Matlack were, in fact, one and the same company, and since Matlack had, in its interrogatories and discovery in the Turnpike suit, taken a position as to his fault inconsistent with Trans-Chem's position at the

---

[3]There were actually two expert reports. But Matlack was not satisfied with the qualifications of its first expert.

arbitration hearing, he should be reinstated to his Trans-Chem job. Evidence was presented in the trial court on these issues.

The trial judge refused to vacate the award for fraud or corruption under *N. J. S. A.* 2A:24–8(a), even though he did find that Matlack and Trans-Chem were joint employers of plaintiff in February 1972 when he was discharged. The judge said that

* * * the witness who testified on behalf of Trans-Chem [at the arbitration hearing] did so in good faith and did honestly believe, at that time, that as a result of his personal investigations that the accident was the result of the negligence of [plaintiff]. Therefore I find it very difficult to find any corruption or fraud * * * to set aside the arbitration award.

The judge further found that there was no fraud or corruption under the foregoing provision of the arbitration statute justifying vacating the award merely because Trans-Chem, through Matlack, after the commencement of the Turnpike action, did not inform the arbitrator that it had changed its position as to plaintiff's negligence. It found that neither defendant had a duty to come forward and make this fact known to the arbitrator in order to give him an opportunity to reconsider his decision.

The judge, however, did order plaintiff reinstated on the theory that Trans-Chem violated the collective bargaining agreement once it, through Matlack, took the position, under oath, in the Turnpike suit, that the accident was not due to plaintiff's negligence. From that point on, according to the judge, Trans-Chem could no longer properly consider plaintiff as having been discharged for cause. The judge determined that the certified answers to interrogatories and the reports received from Matlack's experts during the course of the Turnpike action provided a factual basis for the changed position taken by Matlack. He refused to consider the interrogatory answers as merely "pro forma" and stated that

* * * fair play between an employer and employee dictates that he should have been reinstated once that [change of] position or those positions were adopted. And so, I do not directly set aside the arbitration award for the reasons I've given. I don't believe that it comes within the statute. However, I do believe that there was an obligation on the part of Trans-Chem to reinstate [plaintiff] at the time the position was taken by Matlack [in] the proceeding instituted by the New Jersey Turnpike Authority, this obligation to reinstate arising out of the fact that there was no longer any just cause for his discharge.

For the purpose of this opinion we assume, without deciding, that, as the trial court found, Trans-Chem and Matlack were plaintiff's joint employer. Nevertheless, we reverse.

The collective bargaining agreement between the union and the employer governs the rights and duties of the employer and plaintiff on the issue of whether he was discharged for just cause. That provides for the sole ultimate method for determining that issue — binding arbitration, subject to the provisions of the arbitration statute relating to the vacation thereof and other factors not here pertinent — *e.g.,* failure of the union fairly to represent plaintiff at the arbitration proceeding. *Cf. Zalejko v. Radio Corp. of America,* 98 *N. J. Super.* 76 (App. Div. 1967), certif. den. 51 *N. J.* 397 (1968). See also, *Davenport v. Terry,* 134 *N. J. Super.* 88, 97 (App. Div. 1975); *P. T. & L. Constr. Co. v. Teamsters Local 469,* 131 *N. J. Super.* 104 (Law Div. 1973), aff'd 66 *N. J.* 97 (1974).

Arbitration is recognized as an essential feature of labor law to increase industrial stability. The scope of judicial inquiry in this area is very limited. The parties to the agreement contract for the judgment of men steeped in the special history and problems of the economic scene. What to a judge may seem frivolous, may to arbitrators be meaningful. The judiciary may not examine the merits of a dispute which, on its face, falls within the provision for arbitration in a collective bargaining agreement. *P. T. & L. Constr. Co., supra* at 114–115.

Even if Matlack is considered a party to the collective bargaining agreement and the arbitration thereunder, by finding a violation of that agreement merely because Matlack took a different position as to plaintiff's negligence about 2½ years after the arbitration award in another proceeding not involving that agreement, the trial judge erroneously invaded an area exclusively within the jurisdiction of the arbitrator. Even a court of equity is not empowered, on notions of fairness, to so rewrite the labor agreement and in effect collaterally to impair the validity of the arbitration award thereunder, absent grounds for vacation of the award provided by statute or case law. No such ground is present here. See *Goerke Kirch Co. v. Goerke Kirch Holding Co.,* 118 N. J. Eq. 1, 6 (E. & A. 1934). See also, *LaStella v. Garcia Estates,* 66 N. J. 297, 303–305 (1975); *Daly v. Komline-Sanderson Engineering Corp.,* 40 N. J. 175, 178–179 (1963); *Local Union 560 v. Eazor Express, Inc.,* 95 N. J. Super. 219, 227 (App. Div. 1967); *Rosa v. Transport Operators Co.,* 45 N. J. Super. 438, 441–442 (App. Div. 1957): *Todd Shipyards, Corp. v. Industrial U. of Marine & Ship Wkrs.,* 242 F. Supp. 606, 611 (D. N. J. 1965); *Civil Service Emp. Ass'n, Inc. v. Lombard,* 50 A. D. 2d 708, 374 N. Y. S. 2d 894 (App. Div. 1975), aff'd, 41 N. Y. 2d 915, 394 N. Y. S. 2d 410, 362 N. E. 2d 1213 (Ct. App. 1977).[4]

The fact that the award was not confirmed by an order or judgment is of no significance. As far as plaintiff and defendants are concerned, the award is conclusive as to them. See *Nix v. Superior Freight Systems, Inc.,* 62 N. J. Super.

---

[4]In view of the grounds on which we have decided this appeal, we need not determine whether the time limitations of N. J. S. A. 2A: 24–7 are applicable to this case. That provides that a party to the arbitration may, "within 3 months after the award * * *, unless the parties shall extend the time in writing, commence a summary action * * * for * * * its vacation, * * * modification or correction," or for its confirmation.

213 (App. Div. 1960); *Kenny v. McLean Trucking Co.*, 54 *N. J. Super.* 533 (App. Div. 1959); *Kearns v. Firemen's Ins. Co. of Newark*, 133 *N. J. L.* 50 (Sup. Ct. 1945); *Deakman v. Odd Fellows Hall Ass'n, etc., Inc.*, 110 *N. J. L.* 304 (E. & A. 1933); *McLean Piece Dye Works v. Verga*, 13 *N. J. Misc.* 416 (Cir. Ct. 1935). The later change of position in another proceeding by defendants cannot make it less conclusive either in whole or in part. Compare *Jennings v. M. & M. Transport Co.*, 104 *N. J. Super.* 265 (Ch. Div. 1969); *Teamsters Local No. 25 v. Penn Transportation Corp.*, 359 *F. Supp.* 344 (D. C. Mass. 1973).

We do not subscribe to the view of the trial judge that the employer's change of position years later in a different proceeding was of such significance as to impair in any way the validity of the arbitration award. Even though Matlack may have taken an inconsistent factual position under oath and had before it evidence which it might have used against the Turnpike Authority to establish that the cause of the accident was the design and construction of the highway, it is evident that its purpose was to endeavor to defend or settle a substantial damage claim against it by the Authority. Indeed, it did settle that claim for $51,000. Such action by Matlack cannot inure to the benefit of plaintiff or require it to employ a truck driver who has been held to have been discharged for good cause.

We note that if the matter between the Turnpike Authority and Matlack had gone to trial, the Authority might have been able to use the evidence by Matlack's employees in the arbitration proceeding as an admission against Matlack's interest. We also note that plaintiff had an opportunity, if he so desired, to advance before the arbitrator as a defense the claimed defect in the Turnpike's design and construction in support of his claimed lack of negligence or recklessness. Apparently, he did not do so.

We are satisfied that under the facts disclosed by this record, the parties relied on the ability of their chosen arbi-

trator to make a final determination under the collective bargaining agreement as to whether plaintiff was the kind of employee, as far as safety was concerned, who must be retained by his employer. That determination may not be set aside some 5 years later by a court under the circumstances presented in this case.

Reversed.